AMERICAN INTER–FIDELITY EXCHANGE, Plaintiff–Appellant,

v.

AMERICAN RE–INSURANCE COMPANY, Defendant–Appellee.

No. 93–2229.

United States Court of Appeals, Seventh Circuit.

Argued Jan. 5, 1994.

Decided March 1, 1994.

Robert D. Hawk, Robert D. Brown (argued), Spangler, Jennings & Dougherty, Merrillville, IN, for plaintiff-appellant.

Michael A. Pope (argued), Caesar A. Tabet, Kevin C. Clegg, Pope, Cahill & Devine, Chicago, IL, for defendant-appellee.

Before EASTERBROOK and RIPPLE, Circuit Judges, and MIHM, District Judge.*

* Hon. Michael M. Mihm, Chief Judge of the Central District of Illinois, sitting by designation.

EASTERBROOK, Circuit Judge.

Two reinsurance treaties between American Inter–Fidelity Exchange and American Re–Insurance Company provide that the reinsurer will reimburse the primary insurer for a portion of "net retained insurance liability." Does that term include sums the primary insurer pays to victims of accidents, and which the insured is obliged to reimburse yet does not? The district court answered "no" as a matter of law, dismissing the complaint under Fed.R.Civ.P. 12(b)(6). We are not so sure and remand for further proceedings.

According to the complaint, American Inter–Fidelity writes vehicular accident insurance and pays victims for their full loss, including deductibles for which the insureds are contractually responsible. It has been unable to collect from its insureds all sums they are required to pay. It asked the reinsurer for its contribution toward $846,256 in uncollected deductibles; the reinsurer refused, asserting that amounts that the insured remains legally required to reimburse are not "insurance" even if the carrier has actually paid the victim and cannot recoup (say, because the insured is bankrupt). The district court dismissed the complaint, concluding that "the scope of the [reinsurance] Agreement is no larger than the scope of the insurance policies underlying it" and that because the insurance policies do not compel American Inter–Fidelity to cover its customers' deductibles, these payments do not represent "insurance."

■■■ Before turning to American Inter–Fidelity's appeal, we must address two jurisdictional questions. Appellate jurisdiction comes first. The reinsurer filed a counterclaim seeking a declaratory judgment that it need not contribute toward the uncollected deductibles. The district judge concluded that the reinsurer is entitled to such a judgment but neglected to enter one. The judgment reads in full: "IT IS ORDERED AND ADJUDGED that defendant is entitled to judgment [sic] as a matter of law on it [sic] Counterclaim against plaintiff, and the court GRANTS defendant's Motion for Judgment on the Pleadings." A "judgment" saying that one party is "entitled to judgment" is of

little use; it implies that one must go somewhere else to find that judgment to which the party is "entitled." The judgment should *award* the relief to which the prevailing party is entitled, not simply announce an entitlement. We have remarked before—many times before—that when the prevailing party is entitled to a declaratory judgment, the district court must draft and enter such a judgment rather than assume that the opinion serves the purpose. E.g., *Azeez v. Fairman*, 795 F.2d 1296 (7th Cir.1986); *Foremost Sales Promotions, Inc. v. Director, BATF*, 812 F.2d 1044 (7th Cir.1987); *American Interinsurance Exchange v. Occidental Fire & Casualty Co.*, 835 F.2d 157 (7th Cir.1987); *Metropolitan Life Insurance Co. v. Cammon*, 929 F.2d 1220 (7th Cir.1991); *Transamerica Insurance Co. v. South*, 975 F.2d 321, 325 (7th Cir.1992). Most of these cases add that when a district court holds that a party is entitled to declaratory relief but does not enter that relief, the decision is not "final" and therefore is not appealable—although *Bankers Trust Co. v. Mallis*, 435 U.S. 381, 98 S.Ct. 1117, 55 L.Ed.2d 357 (1978), provides an escape hatch when it is clear not only that the district court has finished with the case but also what the relief would be. See *Frank Rosenberg, Inc. v. Tazewell County*, 882 F.2d 1165, 1166 n. 1 (7th Cir.1989). After we alerted the parties to this problem at oral argument, they returned to the district court, which then entered a proper declaratory judgment. The original notice of appeal sufficed under Fed.R.App.P. 4(a)(2) to confer jurisdiction, see *Metropolitan Life Insurance*, 929 F.2d at 1222, so we may proceed—although not without remarking yet again that district judges can make litigation simpler for us, and cheaper for the parties, by scrupulously performing their obligations under Fed.R.Civ.P. 58 and 79.

■■■ Having explored our own jurisdiction, we must ensure that the district court also had jurisdiction. The complaint alleged that American Inter–Fidelity is an Indiana corporation with its principal place of business in Indiana and that American Re–Insurance is a Delaware corporation licensed to do business in Indiana. These allegations do not establish diversity of citizenship, because

they do not reveal defendant's principal place of business. Belatedly realizing this omission, American Inter–Fidelity moved to amend its complaint to make the proper allegations of diversity; the district court denied this motion as "moot" because an amendment would be "useless given that the court is granting defendant's Motion for Judgment on the Pleadings." The court apparently believed that so long as it rules for the defendant on the merits, subject-matter jurisdiction is irrelevant. We have addressed that fallacy before: "The court's power to enter a judgment of any kind, in favor of either side, depends on the existence of" jurisdiction. *Tisza v. Communications Workers*, 953 F.2d 298, 300 (7th Cir.1992). See also *Metropolitan Life Insurance*, 929 F.2d at 1222–23. As it turns out, however, the pleadings already establish that the parties are of diverse citizenship. Defendant's counterclaim contains an independent set of jurisdictional allegations, including the information that American Re–Insurance has its principal place of business in New Jersey. Jurisdiction under 28 U.S.C. § 1332 is secure, and we turn to the merits.

American Inter–Fidelity writes insurance for trucks engaged in interstate commerce and thus subject to the jurisdiction of the Interstate Commerce Commission and the Secretary of Transportation. According to 49 U.S.C. § 10927(a)(1), the ICC may not issue a certificate of public interest, convenience, and necessity to a carrier out of compliance with financial responsibility regulations issued by the Secretary under § 30 of the Motor Carrier Act of 1980, Pub.L. 96–296, 94 Stat. 820. Section 30 and the implementing regulations, 49 C.F.R. Part 387, require all truckers to have insurance that will reimburse victims of accidents up to specified limits—now $750,000 for ordinary cargo, $1 million for shipments of oil and hazardous waste, and $5 million for shipments of explosives, radioactive materials, and poison gas. 49 C.F.R. § 387.9. The Secretary has devised a standard form of endorsement for insurance policies that complies with the regulations. 49 C.F.R. § 387.15. Every insurer must use this endorsement or equivalent language. By this endorsement the insurer promises to pay the full judgment up to the regulatory minimum. See *Empire Fire & Marine Insurance Co. v. Guaranty National Insurance Co.*, 868 F.2d 357 (10th Cir.1989). Thus if the policy promises $700,000 of insurance after the insured has paid a deductible of $50,000, the insurer nonetheless agrees to pay any victim a total of $750,000. Indeed, the insurer must pay the victim in full even if the loss from the accident does not exceed the deductible, a circumstance under which ordinary insurance does not kick in. It remains entitled to collect the deductible from its insured. The endorsement provides: "all terms, conditions, and limitations in the policy to which the endorsement is attached shall remain in full force and effect as binding between the insured and the company. The insured agrees to reimburse the company for any payment made by the company ... that the company would not have been obligated to make under the provisions of the policy except for the agreement contained in this endorsement."

Because the endorsement requires the insurer to pay even the sums labeled "deductibles" in the policies, the district court erred in treating the payments as gratuitous. The source of this error, however, lies in the parties' own submissions. American Inter–Fidelity did not bother to furnish the district court with a copy of the mandatory endorsement. Instead, when replying to defendant's motion to dismiss, it pointed to 49 C.F.R. § 1043.2(a)(1), which defines "primary security" as "public liability coverage provided by the insurance or surety company responsible for the first dollar of coverage." The district court observed that this regulation does not require any insurer to indemnify an insured from the first dollar of loss; it simply defines as "primary" whichever policy supplies the "first dollar of coverage." So far as the definition is concerned, the insured could bear the first $50,000 or $5 million of loss. What we know from the statutes, from 49 C.F.R. § 387.7, and from the mandatory endorsement, however, is that carriers must protect potential victims from the first dollar of loss.

■ Because this case arose under Rule 12(b)(6), it is not too late to bring the endorsement to our attention on appeal. A

**1022**

complaint may be dismissed only if it is impossible to prove any set of facts, consistent with the allegations of the complaint, establishing an entitlement to prevail. Although a plaintiff may not amend the complaint on appeal to state a new claim, it may point to (or even hypothesize) facts consistent with the existing language of the complaint showing such an entitlement. See *Harrell v. United States,* 13 F.3d 232, 235–36 (7th Cir.1993); *Dawson v. General Motors Corp.,* 977 F.2d 369, 372 (7th Cir.1992); *Early v. Bankers Life & Casualty Co.,* 959 F.2d 75, 79 (7th Cir.1992); *Orthmann v. Apple River Campground, Inc.,* 757 F.2d 909, 914–15 (7th Cir.1985). American Inter–Fidelity's complaint asserts that it provides coverage from the first dollar of loss. Looking only at 49 C.F.R. § 1043.2, the district court did not believe the assertion; yet on a motion to dismiss the court must accept the allegations as true, and the mandatory endorsement shows how plaintiff can establish an obligation to pay victims from the first dollar of loss. The ground of decision on which the district court relied was illusory.

 What we have said so far does not necessarily entitle American Inter–Fidelity to victory. The regulations do not affect the terms of the agreements between insurer and insured—or between insurer and reinsurer. The reinsurance agreement cedes American Re–Insurance 40% of the "net retained insurance liability." American Inter–Fidelity therefore needs to establish that its obligation to pay victims from the first dollar of loss is "insurance." The alternative characterization: suretyship. The Secretary does not care whether operators obtain insurance or surety bonds. 49 C.F.R. § 387.9. It is concerned with the protection of persons injured by trucking operations, not with how payment is assured. The difference between suretyship and insurance lies in the identity of the person ultimately responsible for the loss. An insurer pays the claimant without right of recourse against its client; a surety pays the claimant but is contractually entitled to reimbursement from its client. A contract providing $700,000 of insurance after the client pays a deductible of $50,000, but (because of the endorsement) requiring the carrier to pay as much as $750,000 to an

injured person, is best understood as $700,000 of insurance plus a surety bond of $50,000. If American Re–Insurance has agreed to reimburse American Inter–Fidelity only for "insurance" obligations, it need not chip in toward losses American Inter–Fidelity suffers in its role as surety for the deductible portion of the policy.

The reinsurance agreement contains its own definition of "net retained insurance liability." According to § 1(b) of the agreement, that phrase "means the Company's gross liability on each policy, each occurrence after deducting recoveries from the excess of loss reinsurance provided under Exhibit B." This definition blurs the line between suretyship and insurance. It readily may be understood to say that the difference between what the carrier pays out on the policy and what it recovers by other means is "net retained insurance liability." (Section 5(c) of the agreement provides that the reinsurer "shall benefit pro rata in all salvages, discounts and other recoveries.") On this understanding, payment to an injured person coupled with an inability to recover the payment from the motor carrier is "net retained insurance liability" even though the transaction bears the hallmarks of suretyship. American Re–Insurance all but ignores § 1(b) of the agreement, instead quoting definitions of "insurance" in legal dictionaries and other cases. Dictionaries record how people have used words in the past but do not override clauses defining those words in particular ways for the purposes at hand. Perhaps something else in the agreement or its negotiating history would support a different understanding, but, on the most straightforward reading, American Re–Insurance bears 40% of American Inter–Fidelity's net loss in its dual role as insurer and surety.

If American Re–Insurance persuades the district court to separate the insurance and suretyship components of the policies, it may succeed only in showing that it owes money to American Inter–Fidelity for a different reason. The premium American Inter–Fidelity receives from its clients is only partly for insurance; the rest is a fee for serving as surety for the deductible. Because a reinsurer is entitled only to a portion of the

insurance premium, the recognition that American Inter–Fidelity bears a suretyship risk may imply that American Re–Insurance owes restitution for the portion of the premium that does not pay for the "insurance" component of the package American Inter–Fidelity sells. The parties have not discussed this detail, which is irrelevant if the definition of "net retained insurance liability" is as broad as it appears to be.

The judgment is reversed, and the case is remanded for further proceedings consistent with this opinion.