In the
United States Court of Appeals
For the Seventh Circuit

No. 99-1355

Steven J. Holman and Karen L. Holman,

Plaintiffs-Appellants,

v.

State of Indiana and Indiana Department
of Transportation,

Defendant-Appellee.

Appeal from the United States District Court
for the Northern District of Indiana, Fort Wayne Division.
No. 97 C 178--William C. Lee, Chief Judge.

Argued November 4, 1999--Decided May 1, 2000

Before Manion, Kanne, and Evans, Circuit Judges.

Manion, Circuit Judge.  In their Title VII suit filed in federal court, Steven and Karen Holman alleged that their supervisor at the Indiana Department of Transportation had sexually harassed each of them individually and on separate occasions, and because they had rejected his sexual solicitations the supervisor retaliated against each of them with certain deprivations. The district court held that the Holmans' complaint of an "equal opportunity harasser" failed to state a claim of sex discrimination under Title VII. See Holman v. State of Indiana, 24 F. Supp.2d 909, 915 (N.D. Ind. 1998) (denying plaintiffs' motion for reconsideration). Because the complaint specifically and unequivocally claimed that the same supervisor had been sexually harassing the male and female plaintiffs by soliciting sex from each on separate occasions and then had retaliated against each, we affirm the district court.

I.  Background
   Steven and Karen Holman are married and both work in the maintenance department at the Indiana Department of Transportation (IDOT). On May 21, 1997, they filed this action against the State of Indiana and the IDOT under Title VII of the Civil Rights Act of 1964 (as amended), 42 U.S.C. sec.

2000e et seq., and the Equal Pay Act (EPA), 29 U.S.C. sec. 206(d)./1 In paragraph 4(b) of the complaint, Karen alleged that "[s]ince December of 1995," her male shop foreman, Gale Uhrich, "began sexually harassing [her] by touching her body, standing too closely to [her], asking her to go to bed with him and making sexist comments and otherwise making [her] work in a sexually hostile work environment." Holman, 24 F. Supp.2d at 911. In paragraphs 4(c) and 4(d), she also alleged that when she rebuffed and protested Uhrich's "sexual propositions," he retaliated against her, and that she "has been denied equal pay for equal work." Id. In paragraph 6(b) of the complaint, Steven similarly alleged that "since August of 1995" Uhrich, who was also his foreman, "had sexually harassed [him] by grabbing his head while asking for sexual favors which requests were refused." Id. And in paragraph 6(c), Steven, too, alleged that Uhrich retaliated against him both for "refusing to 'give-in' to [Uhrich's] request for sexual favors" and "as a result of his affiliation with his wife, Karen L. Holman, who filed [internal] sexual harassment charges against Uhrich." Id. In paragraphs 5 and 7, both Karen and Steven sought compensatory damages under Title VII for the lost income, mental anguish, and stress they had suffered as a result of Uhrich's "sexual harassment and retaliation." (Karen also sought damages under the EPA for being paid "less money than similarly situated males." Complaint, para.5.)

The IDOT moved to dismiss the Holmans' Title VII sexual harassment claims under Fed. R. Civ. P. 12(b)(6). On September 8, 1997, the district court granted the motion, holding that "because both plaintiffs were alleging sexual harassment by the same supervisor, they both, as a matter of law, could not prove that the harassment occurred 'because of sex.'" Holman, 24 F. Supp.2d at 910. The Holmans moved the district court to reconsider its order in light of Oncale v. Sundowner Offshore Services, Inc., 523 U.S. 75 (1998). See Holman, 24 F. Supp.2d at 910. The court denied the "motion for reconsideration with respect to the argument that Oncale altered [its] prior ruling," but it took its prior order under advisement and ordered supplemental briefing so the parties could address cases "which contained language" that supported the Holmans' argument that they both "could maintain a cause of action for sexual harassment." Id. After thoroughly surveying the applicable law, the district court denied the Holmans' motion for reconsideration and reinstated its order dismissing their sexual harassment claims. Id. at 916. Because the Holmans' retaliation and equal pay claims remained, the court certified its dismissal of their harassment claims pursuant to Fed. R. Civ.

P. 54(b). See Granack v. Continental Cas. Co., 977 F.2d 1143, 1144-45 (7th Cir. 1992)./2 The Holmans appeal the dismissal of this claim, and we have jurisdiction over it under 28 U.S.C. sec. 1291 as a final decision. See King v. Gibbs, 876 F.2d 1275, 1277 (7th Cir. 1989). The Equal Employment Opportunity Commission (EEOC) appears as amicus curiae in support of the Holmans.

II.  Discussion

We review de novo a dismissal of a claim under Rule 12(b)(6), accepting as true all facts alleged in the complaint and drawing all reasonable inferences from them in the plaintiff's favor. Ledford v. Sullivan, 105 F.3d 354, 356 (7th Cir. 1997). "We will affirm the dismissal of a complaint if 'it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations.'" Id. (quoting Hishon v. King & Spalding, 467 U.S. 69, 73 (1984)).

A. Title VII's Requirement of Discrimination and the "Equal Opportunity Harasser"

Title VII of the Civil Rights Act of 1964, as amended, prohibits discrimination on the basis of sex: "It shall be an unlawful employment practice for an employer to fail or refuse to hire or to discharge any individual or to otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's . . . sex." 42 U.S.C. sec. 2000e-2(a)(1). The purpose of this provision is to prevent "'disparate treatment of men and women in employment,'" regardless of its form. Oncale, 523 U.S. at 78 (quoting Meritor Savings Bank, FSB v. Vinson, 477 U.S. 57, 64 (1986)). Whenever, therefore, "'the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment, Title VII is violated.'" Id. (emphasis added) (quoting Harris v. Forklift Systems, Inc., 510 U.S. 17, 21 (1993)).

In Oncale, the Supreme Court reiterated that "Title VII's prohibition of discrimination 'because of . . . sex' protects men as well as women," id., and it held that this prohibition applies to the same-sex harasser, whether or not that harasser is motivated by sexual desire. See id. at 79-80 ("If our precedents leave any doubt on the question, we hold today that nothing in Title VII necessarily bars a claim of discrimination 'because of . . . sex' merely

because the plaintiff and the defendant . . . are of the same sex."). In doing so, it underscored that the touchstone of Title VII is, of course, discrimination or disparate treatment. Oncale--although a unanimous decision, only a few pages long--said so no less than four times, id. at 79-81 and more than once with emphasis. See id. at 80 ("Title VII does not prohibit all verbal or physical harassment in the workplace; it is directed only at 'discrimina[tion] . . . because of . . . sex.'") (emphasis added). Indeed, Justice Thomas specifically (and pointedly, quite briefly) concurred to highlight that premise: "I concur because the Court stresses that in every sexual harassment case, the plaintiff must plead and ultimately prove Title VII's statutory requirement that there be discrimination 'because of . . . sex.'" Id. at 82.

   The Court explicated what it meant by "discrimination" in sexual harassment cases; it is to be determined on a gender-comparative basis: "The critical issue, Title VII's text indicates, is whether members of one sex are exposed to disadvantageous terms or conditions of employment to which members of the other sex are not exposed." Id. at 80 (emphasis added) (quoting Harris, 510 U.S. at 25 (Ginsburg, J., concurring)). This inquiry applies to both same- and opposite-sex harassment. Id. at 80-81 ("A same-sex harassment plaintiff may also, of course, offer direct comparative evidence about how the alleged harasser treated members of both sexes . . . ."). "Whatever evidentiary route the plaintiff chooses to follow, he or she must always prove that the conduct at issue . . . actually constituted 'discrimina[tion] . . . because of . . . sex.'" Id. at 81 (emphasis in original). Thus a violation of Title VII only occurs because of sex discrimination.

   Both before and after Oncale, we have noted that because Title VII is premised on eliminating discrimination, inappropriate conduct that is inflicted on both sexes, or is inflicted regardless of sex, is outside the statute's ambit. Title VII does not cover the "equal opportunity" or "bisexual" harasser, then, because such a person is not discriminating on the basis of sex. He is not treating one sex better (or worse) than the other; he is treating both sexes the same (albeit badly). See Pasqua v. Metropolitan Life Ins. Co., 101 F.3d 514, 517 (7th Cir. 1996) ("Harassment that is inflicted without regard to gender, that is, where males and females in the same setting do not receive disparate treatment, is not actionable because the harassment is not based on sex."); Shepherd v. Slater Steels Corp., 168 F.3d 998, 1011 (7th Cir. 1999) ("Although we readily acknowledge that

the factfinder could infer from such evidence that Jemison's harassment was bisexual and therefore beyond the reach of Title VII . . . ."); see also Henson v. City of Dundee, 682 F.2d 897, 904 (11th Cir. 1982) ("There may be cases in which a supervisor makes sexual overtures to workers of both sexes or where the conduct complained of is equally offensive to male and female workers. In such cases, sexual harassment would not be based on sex because men and women are accorded like treatment . . . . [and] the plaintiff would have no remedy under Title VII."). As a result, the unfortunate objects of such harassment may be limited to state law for a remedy. See Johnson v. Hondo, Inc., 125 F.3d 408, 410 (7th Cir. 1997) (besides Title VII sexual harassment claim, plaintiff alleged five state law causes of action, including assault, battery, and intentional infliction of emotional distress); Henson, 682 F.2d at 904.

The Holmans do not really address Oncale's emphasis on the statutory requirement of discrimination. And amicus EEOC candidly admits that under Pasqua and Shepherd, this circuit does not recognize Title VII sexual harassment claims in the case of the "equal opportunity" harasser. Instead, both say that exempting the "equal opportunity" harasser from Title VII would be an anomalous result and bad policy (it would, they argue, encourage harassers to manufacture a second harassment of a different sex so they could insulate themselves from Title VII liability). They cite pre-Oncale decisions, including one vacated by the Supreme Court, Doe by Doe v. City of Belleville, Ill., 119 F.3d 563 (7th Cir. 1997), vacated and remanded in light of Oncale, 523 U.S. 1001 (1998). Those cases recite or suggest the same policy complaint. See McDonnell v. Cisneros, 84 F.3d 256, 260 (7th Cir. 1996) ("It would be exceedingly perverse if a male worker could buy his supervisors and his company immunity from Title VII liability by taking care to harass sexually an occasional male worker, though his preferred targets were female.").

We do not think, however, that it is anomalous for a Title VII remedy to be precluded when both sexes are treated badly. Title VII is predicated on discrimination. Given this premise, requiring disparate treatment is consistent with the statute's purpose of preventing such treatment. Oncale, 523 U.S. at 78 (congressional intent is to prevent "disparate treatment of men and women in employment."). It is likewise consistent with the statute's plain language. See 42 U.S.C. sec. 2000e-2(a)(1) ("It shall be an unlawful employment practice . . . to otherwise discriminate . . . ."). If anything, it would be

anomalous not to require proof of disparate treatment for claims of sex discrimination (of which sexual harassment is a subset), yet that is essentially what the Holmans urge. To do so would change Title VII into a code of workplace civility, and the Supreme Court has already rejected such an interpretation of Title VII. In Oncale, the Court in fact explained that one way to ensure that Title VII does not mutate from a prohibition on sexual discrimination to a general prohibition on harassment is to be faithful to the statute's plain language, and by that it meant requiring a demonstration that there be different treatment of the sexes.

But that risk . . . is adequately met by careful attention to the requirements of the statute. Title VII does not prohibit all verbal or physical harassment in the workplace; it is directed only at "discriminat[ion] . . . because of . . . sex." . . . "The critical issue, Title VII's text indicates, is whether members of one sex are exposed to disadvantageous terms or conditions of employment to which members of the other sex are not exposed."

523 U.S. at 80 (emphasis in original) (quoting Harris, supra)./3

Furthermore, the Holmans' theory that sexual harassers will attempt to insulate themselves and their employers from liability by purposely harassing members of both sexes in order to disguise their real intent seems unrealistic. It is hard to imagine that would-be harassers will know the intricacies of sexual harassment law and will manufacture additional harassments to attempt to avoid Title VII liability, particularly when doing so will increase their risk of being fired, sued under state law, and ostracized. Surely attorneys will not advise their employer-clients to instruct their employees to harass still more people--to commit, in most cases, state law torts--which could subject their clients to lawsuits and themselves to claims of malpractice and charges of professional misconduct. Moreover, if attorneys were actually to dispense such incredible advice, and their clients were to follow it, the clients would still be subject to Title VII liability. In such cases the harasser is not a bona-fide "equal opportunity" harasser; he is manufacturing another harassment to avoid Title VII liability./4

These extreme hypotheticals aside, the Holmans and the EEOC still express public policy concerns that "authentic" bisexual or equal-opportunity harassers are not covered by Title VII. But it is for Congress to decide whether to address bad

workplace behavior that cannot be labeled discriminatory. It is not the province of federal courts to expand the language of a statute that is clearly limited. Title VII covers only sex discrimination.

B. The Holmans' Sexual Harassment Claims

The district court dismissed the Holmans' sexual harassment claims, concluding that the Holmans could not claim discrimination because they had alleged that their supervisor had been sexually harassing both of them by soliciting sex from each of them. Thus, applying Oncale, the district court reasoned that "neither was subjected to disadvantageous terms or conditions of employment to which members of the other sex were not exposed." Holman, 24 F. Supp.2d at 915. We agree.

The Holmans seem to assert that even if Title VII does not cover the "equal opportunity" harasser, the district court erred in dismissing their sexual harassment claims because it is possible, under some set of facts, for at least one of them to maintain a claim for sexual harassment. They do not explain, however, how one of them could do so under the present allegations that Uhrich had been sexually harassing both of them by sexually propositioning each of them, and thus was not discriminating against either of them. We accept the complaint at its face value and will not speculate over how it could have some other meaning. See Liu v. T&H Machine, Inc., 191 F.3d 790, 795 (7th Cir. 1999) ("we are not obligated to guess at a party's meaning, however, and arguments insufficiently developed on appeal are waived.")./5

The Holmans contend that under Rule 12(b)(6), their sexual harassment claims cannot be dismissed unless it is impossible to establish a claim under any set of facts. But the Holmans only have it half right. While their claims may not be dismissed under Rule 12(b)(6) unless they cannot prove a claim under any set of facts, those facts must be consistent with the allegations of the complaint. Hishon, 467 U.S. at 73. Thus, while the Holmans can allege (hypothesize) new facts on appeal, such facts are irrelevant if not consistent with the complaint. Stevens v. Umsted, 131 F.3d 697, 705 (7th Cir. 1997) ("This court has held that when reviewing Rule 12(b)(6) motions, we will consider new factual allegations raised for the first time on appeal provided they are consistent with the complaint."). Accord American Inter-Fidelity Exchange v. American Re-Insurance Co., 17 F.3d 1018, 1022 (7th Cir. 1994); Dawson v. General Motors Corp., 977 F.2d 369, 372 (7th Cir. 1992). Because the complaint clearly pleaded that Uhrich had been separately sexually harassing both Karen

and Steven by propositioning them, it is inconsistent (and thus improper) for the Holmans now essentially to propose that he did not./6

   Similarly, every new scenario amicus EEOC proposes contradicts the Holmans' allegations and assumes that Uhrich did not really sexually harass either Steven or Karen. For example, the EEOC argues that the facts could show that Uhrich harassed Karen out of spite because he was jealous of her relationship with her husband (with whom Uhrich really wanted to have sexual relations) and thus was not really an "equal opportunity" harasser. But speculating that Uhrich propositioned and accosted Karen Holman because she was married or loyal to her husband, is inconsistent with the complaint, which alleges that Uhrich "sexually harassed" her "in violation of Title VII," which, by definition, simply means that he harassed her because she was a woman. See 42 U.S.C. sec. 2000e-2(a)(1); see also Sweeney v. West, 149 F.3d 550, 555 (7th Cir. 1998); Scusa v. Nestle U.S.A. Co., Inc., 181 F.3d 958, 965 (8th Cir. 1999). The EEOC cannot essentially "amend the complaint on appeal to state a new claim . . . . ." American Inter-Fidelity Exchange, 17 F.3d at 1022; see also Dawson, 977 F.2d at 372-373 ("Of course, a plaintiff may not argue on appeal that a contract consisted of Y when the complaint alleged that the contract consisted of X.")./7
   Additional discovery, then, would not save the Holmans' sexual harassment claims. Their problem is that the allegations in their complaint are very precise; the complaint simply and clearly says that their supervisor was sexually harassing each of them by asking for sexual favors. As a matter of law, then, neither of them has a claim for discrimination under Title VII. Northern Trust Co. v. Peters, 69 F.3d 123, 129 (7th Cir. 1995) ("More is not necessarily better under the Federal Rules; a party 'can plead himself out of court by . . . alleging facts which . . . demonstrate that he has no legal claim.'") (quoting Trevino v. Union Pacific R.R. Co., 916 F.2d 1230, 1234 (7th Cir. 1990)).

   Recognizing the difficulty in which their complaint has placed them, the Holmans hopefully contend that they have pleaded in the alternative--that they really have alleged that Uhrich harassed either Karen or Steven, but not both of them. See Fed. R. Civ. P. 8(e)(2). It should be noted that this argument is at odds with what they told us earlier in oral argument/8 and in their briefs./9 Moreover, the Holmans did not make this argument in their initial appellate brief (in fact, they did not make it until rebuttal at oral argument) and thus it is waived. See Lear, 2000 WL 291376, at *2. But assuming this argument were properly

presented, it is not possible, even by generously reading the complaint, to construe it as pleading the Holmans' sexual harassment claims in the alternative. Schott Motorcycle Supply, Inc. v. American Honda Motor Co., Inc., 976 F.2d 58, 62 (1st Cir. 1992) (Rule 8(e)(2) allows alternative and hypothetical pleading. "Plaintiff's assertion, however, . . . was not made in the context of an alternative or hypothetical pleading."). While the Holmans need not use particular words to plead in the alternative, they must use a formulation from which it can be reasonably inferred that this is what they were doing. See id. (citing 5 Wright & Miller, Federal Practice and Procedure sec. 1282 at 525 (2d ed. 1990) (generally an alternative claim is drafted in the form of "either-or" and a hypothetical claim is in the form of "if-then")). The "liberal construction accorded a pleading under Rule 8(f) does not require the courts to fabricate a claim that a plaintiff has not spelled out in his pleadings." 5 Wright & Miller, Federal Practice and Procedure, sec. 1286 at 558 (2d ed. 1990), quoted in Schott, 976 F.2d at 62. And while we must draw reasonable inferences in the Holmans' favor, we should not draw inferences that while theoretically plausible are inconsistent with the pleadings. Ledford, 105 F.3d at 356. Here, the Holmans did not attempt to plead in the alternative; they clearly pleaded in tandem. Both claimed, without equivocation, that Uhrich sexually harassed (and then retaliated against) each of them, and we cannot change that alleged fact. City Nat'l Bank of Fla. v. Checker, Simon & Rosner, 32 F.3d 277, 281 (7th Cir. 1994).

III.  Conclusion

  For the foregoing reasons, the order of the district court dismissing the plaintiffs' sexual harassment claims is

AFFIRMED.


/1 Although not raised by the parties, we assume the IDOT, and not the State of Indiana generally, has "actual hiring and firing responsibility" as to the Holmans and is thus their "employer" for purposes of Title VII. Hearne v. Board of Educ. of City of Chicago, 185 F.3d 770, 777 (7th Cir. 1999) ("Title VII actions must be brought against the 'employer.' In suits against state entities, that term is understood to mean the particular agency or part of the state apparatus that has actual hiring and firing responsibility."). As a result, the Holmans cannot maintain Title VII claims against the State of Indiana. Id. (holding that because "[n]either the Governor's office,

the State of Illinois as a whole, nor the IELRB is the 'employer' for Title VII purposes . . . the case against these defendants [is at an end].").

/2 The Eleventh Amendment does not bar the Holmans' Title VII claims. See Fitzpatrick v. Bitzer, 427 U.S. 445, 448-449, 456 (1976); Velasquez v. Frapwell, 160 F.3d 389, 395 (7th Cir. 1998), vacated in part on other grounds, 165 F.3d 593, 594 (7th Cir. 1999). Although not before us, we note that the viability of Karen Holman's EPA claim, however, is now questionable in light of Kimel v. Florida Bd. of Regents, 120 S. Ct. 631, 639, 650 (2000) (holding that the ADEA did not validly abrogate states' Eleventh Amendment immunity). See Varner v. Illinois State Univ., 150 F.3d 706, 717 (7th Cir. 1998) (holding that EPA abrogated Eleventh Amendment immunity), vacated and remanded in light of Kimel, 120 S. Ct. 928 (2000).

/3 The other "requirement that prevents Title VII from expanding into a general civility code" is interpreting the statute not to "reach genuine but innocuous differences in the ways men and women routinely interact . . . [I]t forbids only behavior so objectively offensive as to alter the 'conditions' of the victim's employment." Id. at 81.

/4 In this case, as we shall see, the Holmans are precluded from making such an argument because they have alleged that Gale Uhrich sexually harassed each of them.

/5 The closest the Holmans come is asserting in their reply brief that had they "been permitted to do discovery, it may be unearthed that one Appellant may have been the victim of sexual harassment while the other is a victim of retaliation." This argument was not properly presented. United States v. Turner, 203 F.3d 1010, 1019 (7th Cir. 2000) (arguments not raised until reply brief are waived). But assuming it were, the Holmans would be hypothesizing about facts that are inconsistent with the complaint (discussed infra): the Holmans specifically pleaded that their supervisor sexually harassed both of them and retaliated against both of them. Similarly, they assert at oral argument for the first time that the evidence could show that the harassment of Mr. Holman was not sufficiently severe or pervasive. Lear v. Cowan, No. 99-2564, 2000 WL 291376, at *2 (7th Cir. March 21, 2000) (arguments raised for the first time at oral argument are waived). But this, too, is inconsistent with the complaint: by pleading that he was sexually harassed in violation of Title VII, Steven is alleging, by definition, that the

harassment was severe or pervasive. It is also inconsistent with what the Holmans told us at oral argument: "Now we are arguing today that both of them, at least at this stage, suffered the type of harassment which is actionable and pervasive . . . ."

/6 This case is thus different from Shepherd, where the plaintiff did not plead that the supervisor had been sexually harassing both a man and a woman. 168 F.3d at 1011 (question as to whether the plaintiff had a viable Title VII sexual harassment claim was raised by evidence that the coworker may have harassed both men and women).

/7 The EEOC also argues that the Holmans' sexual harassment claims should not be dismissed because the evidence could show that Uhrich sexually harassed them in ways unique to their sex (evidently, meaning in terms of their different body parts). Given the (obvious) differences in male and female anatomy, that Uhrich would do so hardly seems remarkable. More to the point, under this theory either Uhrich sexually harassed both the Holmans (as they alleged), in which case he would not be discriminating against either of them (and we would be back to where we started), or he did not sexually harass one of them, which would be a scenario inconsistent with the complaint.

/8 "Mr. and Mrs. Holman worked for the State of Indiana. They were sexually harassed by the same supervisor. They filed a complaint in court by which each of them alleged sexual harassment by the same supervisor."

/9 "At this stage, Plaintiffs have alleged in their complaint that Mr. Uhrich's intended targets were both Steven and Karen Holman." Initial Brief at 14 (emphasis added); see also id. (emphasis in original) ("Both Steven and Karen Holman should be able to pursue their respective harassment claims because they were both harassed 'because of' their gender.").

EVANS, Circuit Judge, concurring. As Judge Manion correctly points out, our cases indicate that the equal opportunity harasser may often not be discriminating against either sex and, as we know, discrimination is the essence of Title VII. We also have indicated that it might be possible for a plaintiff to show an exception: that the equal opportunity harasser engaged in such sex specific and derogatory behavior as to reveal an "antipathy to persons of the plaintiff's gender," thus allowing for the possibility that a plaintiff could prove that an equal opportunity

harasser was not harassing so equally after all and was, in fact, discriminating against one sex or the other. See Shepherd v. Slater Steels Corp., 168 F.3d 998, 1008 (7th Cir. 1999). I write separately only to note that the recognition of that possibility eliminates what otherwise seems to be a troubling clash with Oncale v. Sundowner Offshore Services, Inc., 118 S. Ct. 998 (1998). The workplace in Oncale had eight employees, all male. Nevertheless, the court concluded that it would be possible to find harassment-- that it would be possible, therefore, to find discrimination. If "discrimination" is possible in a single-sex workplace, it might also be possible in some circumstances in which we find an equal opportunity harasser. Because this case comes to us on a complaint full of facts which reveal Uhrich to be a true equal opportunity harasser, I join the opinion.