**UNPUBLISHED ORDER**
Not to be cited per Circuit Rule 53

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued March 1, 2005
Decided April 5, 2005

**Before**

Hon. MICHAEL S. KANNE, *Circuit Judge*

Hon. TERENCE T. EVANS, *Circuit Judge*

Hon. ANN CLAIRE WILLIAMS, *Circuit Judge*

No. 04-2727

| | |
|---|---|
| GARY T. PIERCE, *Plaintiff-Appellant,* | Appeal from the United States District Court for the Central District of Illinois |
| *v.* | No. 03-3222 |
| ILLINOIS DEPARTMENT OF HUMAN SERVICES, *Defendant-Appellee.* | Jeanne E. Scott, *Judge.* |

**ORDER**

Gary Pierce, who is black, sued his employer under Title VII. Essentially reasoning that Pierce pleaded himself out of court given the specific allegations in his complaint, the district court dismissed. Now, Pierce argues that dismissal was premature because the court disregarded additional allegations included in his response to the defendant's motion to dismiss or, alternatively, because the court should have permitted him to amend. Whatever his ultimate chance of success might be, we hold that the district court dismissed Pierce's complaint prematurely.

Pierce is a residential care worker at the Illinois School for the Deaf, a unit of the Illinois Department of Human Services (DHS). In October 2003 he sued DHS pro se under Title VII, *see* 42 U.S.C. § 2000e *et seq.*, claiming that he was subjected to "unequal terms and conditions of employment." Pierce explained that he was suspended for 15 days for sleeping on the job after coworker Fred Hoagland reported him. He added that Hoagland later followed him on a fishing trip "to

harass" him and during the trip called him a "nigger." Pierce allegedly reported Hoagland to management, but Hoagland was not punished. To show exhaustion of his administrative remedies, Pierce attached a right-to-sue letter from the Equal Employment Opportunity Commission. He demanded $500,000 and a specially created job at DHS "to monitor discriminatory acts of this nature."

DHS moved for dismissal under Rule 12(b)(2), (5), and (6) of the Federal Rules of Civil Procedure. DHS first argued that Pierce had waived any claim of race discrimination arising from his 15-day suspension by entering a settlement at the administrative level. DHS attached a copy of the settlement reached with Pierce during proceedings before the Illinois Department of Human Rights releasing DHS from "any and all claims" arising from his suspension for sleeping. DHS next maintained that a coworker's one-time use of a racial slur could not support a claim of a hostile work environment, which DHS understood Pierce's complaint to allege. Finally, DHS contended that Pierce had failed to effect service within 120 days.

Pierce, still pro se, filed a response asserting that he does not seek to recover for the suspension but merely referenced the incident in his complaint as a "comparison" to show disparate treatment. Pierce also asserted in his response that he could present additional evidence at trial in order to show harassment. Specifically, he maintained that he would "show that he could present evidence at trail [sic] that he was subjected to egregious racially motivated conduct in the workplace or to a pattern of racially motivated incidents to [sic] numerous to submit at this time." Additionally, Pierce explained that he could present evidence that he endured six kinds of racial harassment: (1) conduct based on race that makes an employee uncomfortable; (2) jokes referring to race; (3) posting of racist cartoons or the like; (4) offensive language including slurs; (5) practical jokes; and (6) retaliation for making complaints. Notably, Pierce attached numerous documents from the administrative process. Pierce filed a separate response arguing that his reliance on the clerk of the district court and the lack of prejudice to DHS constituted "good cause" to serve DHS late.

In deciding the motion to dismiss, the district court concluded that documents submitted by the parties from the administrative process could be considered because they are public records. With these documents, the court pieced together the story of Pierce's three administrative charges against DHS for employment discrimination. First, Pierce filed an administrative charge in 1998. Although the charge itself was not provided by the parties, the 1998 charge was based on the episode Pierce describes in his complaint in which he was suspended for sleeping. The parties settled that charge during the administrative process, and as part of the settlement Pierce released DHS from "any and all claims" arising from his suspension for sleeping. The second administrative charge, filed in

February 2000, alleged unequal treatment in that Pierce was suspended for sleeping on the job after Hoagland reported him whereas Hoagland received no punishment at all for calling Pierce a "nigger." A state administrative law judge recommended dismissal of the 2000 charge with prejudice on the ground that Pierce was barred by the earlier settlement from bringing any claim revolving around his suspension for sleeping. Although not mentioned by the district court, the 2000 charge also alleged that Pierce was denied a transfer because of his race and in retaliation for reporting discrimination, but the state agency "administratively closed" those allegations at Pierce's request, so they were never before the ALJ. The EEOC, administering the 2000 claim concurrently, issued a right-to-sue letter. This is the letter attached to Pierce's complaint, as mentioned above. Finally, the third administrative charge—filed in December 2003 (two months after he filed this suit)—alleged that Pierce was put on administrative leave for threatening another employee even though the other employee was never disciplined when Pierce had complained about him (for reasons that are not explained). The third charge also alleged generally that DHS retaliated against Pierce for filing his February 2000 administrative charge.

With this history in mind, the district court determined that Pierce had pleaded himself out of court and thus under Rule 12(b)(6) failed to state a claim. First, the district court reasoned that Pierce could not maintain a claim for disparate treatment, which requires an adverse employment action, since the only adverse employment action he alleged was the suspension for sleeping and any suit arising from that incident was barred by the administrative settlement. Second, the court explained that one coworker's use of a racial slur on a single occasion, while deplorable, was not the kind of pervasive or severe harassment necessary to prove a claim for hostile work environment. The district court declined to consider any of the allegations in the third administrative complaint because Pierce did not seek relief from the court on those allegations. In dismissing, the court made no mention of the allegations in Pierce's response to DHS's motion to dismiss.

Pierce retained counsel and appealed. In this court he concedes that the district court properly considered documents from the administrative proceedings[1]

---

[1]The district court relied on *Henson v. CSC Credit Servs.*, 29 F.3d 280, 284 (7th Cir. 1994), for the proposition that it could take judicial notice of public court documents while considering a motion to dismiss under Rule 12(b)(6). Had the materials not properly been subject to judicial notice, the district court would have had to convert to a motion for summary judgment, *see id.*, and provide Pierce with notice and the opportunity to be heard under the summary judgment rule, *see Alioto v. Marshall Field's & Co.*, 77 F.3d 934, 936 (7th Cir. 1996). Anyway, Pierce

(continued...)

and does not argue that the allegations in his complaint, if read in isolation, would have saved his complaint from dismissal. In fact he now apparently agrees with the district court that his claim for disparate treatment based on his 1998 suspension for sleeping was properly dismissed. Pierce, however, contests the dismissal of his hostile-work-environment claim. He maintains that dismissal of that claim was erroneous because his response to DHS's motion to dismiss alleges additional acts of harassment sufficient to alert the district court that the claim wasn't grounded on a single incident or, alternatively, because the district court should have allowed him to amend his complaint before dismissing the case.

The burden on a plaintiff in stating a claim under the Federal Rules of Civil Procedure is light. A plaintiff need not plead legal theories nor allege all the facts necessary to establish the essential elements of a legal theory. *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512–14 (2002); *Higgs v. Carver*, 286 F.3d 437, 439 (7th Cir. 2002); *Albiero v. City of Kankakee*, 122 F.3d 417, 419 (7th Cir. 1997). Instead, the plaintiff needs to provide only a short, plain statement of his or her grievance, Fed. R. Civ. P. 8(a)(2); *Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 168 (1993), and the complaint is sufficient so long as it puts defendants on notice of the of the claims and the grounds they rest upon, along with "some indication . . . of time and place." *Thomson v. Washington*, 362 F.3d 969, 970–71 (7th Cir. 2004). Thus, dismissal is seldom appropriate for lack of specificity. Instead, we will affirm a dismissal for failure to state a claim only if no relief could be granted under any set of facts consistent with the plaintiff's allegations. *See Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984); *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). Even so, from time to time plaintiffs will plead facts with more specificity than necessary and inadvertently admit all the elements of a defense to preclude relief—that is, they plead themselves out of court. *See Xechem, Inc. v. Bristol-Myers Squibb Co.*, 372 F.3d 899, 901 (7th Cir. 2004); *Thompson v. Ill. Dep't of Prof'l Regulation*, 300 F.3d 750, 753 (7th Cir. 2002); *Jefferson v. Ambroz*, 90 F.3d 1291, 1296 (7th Cir. 1996).

Although in his complaint Pierce never mentions any particular theory of employment discrimination, DHS and the district court understood his complaint to include two claims: disparate treatment on account of the suspension (a claim that Pierce concedes was properly dismissed) and hostile work environment. A hostile-work-environment claim would ultimately require him to show: (1) he suffered "unwelcome harassment"; (2) the harassment was based on race; (3) the harassment was so "severe or pervasive" as to create "a hostile or abusive situation"; and

---

[1](...continued)
not only declines to contest the court's reliance, he relied on administrative documents himself in his response.

(4) there was some basis for "employer liability." *Smith v. Northeastern Ill. Univ.*, 388 F.3d 559, 566 (7th Cir. 2004) (quoting *Williams v. Waste Mgmt. of Ill.*, 361 F.3d 1021, 1029 (7th Cir. 2004)). Here, pointing to the third prong, and ignoring the allegations of additional incidents of harassment that Pierce asserted in his response to DHS's motion to dismiss, the district court held that Pierce pleaded himself out of court because a single racial slur could never constitute severe or pervasive harassment.

Pierce agrees that a single racial slur would not establish a hostile work environment, but he maintains that he never admitted that just one such instance of workplace harassment is the extent of his evidence. Instead, he maintains that he actually suffered pervasive harassment in addition to that one slur and that he saved his complaint by saying as much in his response to DHS's motion to dismiss.

Precisely because a plaintiff need not plead all the facts necessary to show recovery for a particular legal theory, it is perfectly appropriate to supplement a complaint with additional factual assertions in an affidavit or brief in order to forestall dismissal, *Albiero*, 122 F.3d at 419, so long as those assertions are *consistent* with the allegations in the complaint, *see Walker v. Thompson*, 288 F.3d 1005, 1008 (7th Cir. 2002); *Gutierrez v. Peters*, 111 F.3d 1364, 1367 n.2 (7th Cir. 1997). If the additional assertions show that he has a claim, then dismissal of the complaint is error. *Albiero*, 122 F.3d at 419. Nonetheless, if the additional factual assertions are *inconsistent* with the allegations in the complaint then they are irrelevant and must not be considered. *See Guise v. BWM Mortgage, LLC*, 377 F.3d 795, 799 (7th Cir. 2004); *Holman v. Indiana*, 211 F.3d 399, 405–07 (7th Cir. 2000). "Inconsistent" in this context typically means contradictory. *See, e.g., Guise*, 377 F.3d at 799; *Holman*, 211 F.3d at 405–07. Additionally, a plaintiff may not *amend* his or her complaint to state a *new claim* on appeal or in a memorandum opposing dismissal; instead, he may only assert new allegations to show the existing language states a claim. *Am. Inter-Fid. Exch. v. Am. Re-Ins. Co.*, 17 F.3d 1018, 1021–22 (7th Cir. 1994); *Harrell v. United States*, 13 F.3d 232, 236 (7th Cir. 1993). In this case Pierce's supplemental allegations are neither contradictory to the allegations in his complaint, nor do they seek to state a new claim—after all, DHS's motion to dismiss evidences that from the very start it was on notice that Pierce was pressing a hostile-work-environment claim. Therefore, the district court should have considered his supplemental allegations when deciding DHS's motion to dismiss.

DHS argues, though, that Pierce's supplemental allegations are too general to meet even the liberal notice requirements of the Federal Rules of Civil Procedure. But DHS misses the point of Pierce's response; his *complaint*, not his response to the motion to dismiss, needed to survive scrutiny under the "short and plain" statement requirement of Rule 8(a). When DHS moved to dismiss on the premise

that the claim for hostile work environment in Pierce's complaint would fail as a matter of law because it was built on a single harassing incident, Pierce responded by explaining that in fact he intended to prove a *series* of harassing incidents, not just one.  Among other things, Pierce asserted in his response that he suffered six kinds of racial harassment, including jokes referring to race, posting of racist cartoons, offensive language including slurs (plural), and retaliation for making complaints—adding up to "egregious racially motivated conduct in the workplace" or a "'hellish' nightmare" that his employer had a "duty" to prevent.  The filing also included some indication of time and place, *see Thomson*, 362 F.3d at 971, by implying that the incidents took place at work and constantly.  DHS cites no authority for the proposition that the further allegations in Pierce's response to the motion to dismiss were required to be more detailed than would have been necessary had they been included in the complaint in the first place.  Instead, having stated enough to put DHS on notice of his claim, Pierce needs to show only that it cannot be said "beyond doubt" that no relief could be granted under any set of facts consistent with the his allegations, *see Swierkiewicz*, 534 U.S. at 512–14; *Conley*, 355 U.S. at 45-46; *see also Hishon*, 467 U.S. at 73.

For these reasons, Pierce satisfied the standard to survive a motion to dismiss for failure to state a claim by adding allegations—consistent with his complaint—that answered the perceived defect in his pleading.  Therefore, we VACATE and REMAND in part so Pierce can press his hostile-work-environment claim.  But because he abandons all other claims on appeal, we AFFIRM the dismissal of the disparate treatment claim.  The parties shall bear their own costs in this court.