In the

# United States Court of Appeals
## For the Seventh Circuit

No. 04-1976

FRANK VENEZIA and LESLIE VENEZIA,

*Plaintiffs-Appellants*,

*v.*

GOTTLIEB MEMORIAL HOSPITAL, INC.,

*Defendant-Appellee.*

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 03 C 7225—**John W. Darrah**, *Judge.*

ARGUED DECEMBER 15, 2004—DECIDED AUGUST 26, 2005

Before KANNE, WOOD, and WILLIAMS, *Circuit Judges.*

WOOD, *Circuit Judge.* Frank and Leslie Venezia, husband and wife, brought this action alleging that each one had suffered sexual harassment and a hostile work environment at the hands of the Gottlieb Memorial Hospital, Inc. The district court granted the Hospital's motion to dismiss under FED. R. CIV. P. 12(b)(6), on the theory that a husband and wife could not logically both maintain claims based on Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e and 2000f, against a single employer in one action. The Venezias appeal. We find that the district court erred in assuming that the normal rule permitting joinder of parties,

expressed in FED. R. CIV. P. 20(a), does not apply to co-plaintiffs who are husband and wife. We therefore reverse and remand for further proceedings.

**I**

Both the Venezias (to whom we refer by first name where necessary to avoid ambiguity) were for a period of time employees of the Hospital. Leslie began work there in December 1993, holding various jobs including at the end the position of Director of Child Care; Frank joined her in November 2000, working in the Building Services and Maintenance Department as a maintenance worker. As a result of the actions described below, Leslie resigned from Gottlieb on July 12, 2002. Frank resigned on October 24, 2002.

In the complaint, whose allegations we accept for purposes of this appeal from a dismissal based on Rule 12(b)(6), Frank alleged that his supervisor and coworkers created a hostile work environment and that the Hospital failed to take corrective action. The harassment began with three anonymous notes left on garbage cans in the Emergency Room Department of the Hospital, which suggested that Frank had obtained his job "through the efforts of his wife." One of the notes insinuated that these "efforts" involved sexual acts. Other notes left at Frank's workplace repeated this accusation and claimed that Frank would be fired by his supervisor, Mark Hannon. One note also said, "Why don't you go to work with your pig friends."

This was not the only way in which Frank's work environment was made hostile. In addition, pictures of nude men were left on his bulletin board and another employee forced him to leave them in place; coworkers crassly inquired about his relationship with his wife; someone sent him a pornographic picture of a nude woman that referred to Leslie; Hannon used profanity while accusing Frank of

having a bad attitude; Hannon held a group meeting where coworkers listed their complaints against Frank; Frank's property was damaged; people were spitting on his coat, his work cart, and his locker; he was shunned by his coworkers; and he discovered the words "your dead" at his workstation. He complained about all of this to the Hospital, which investigated his complaints but did nothing to correct any of the problems.

Under stress, Frank took a medical leave from work on July 18, 2002. After his leave expired three months later, the Hospital notified him that he could request an additional two-month extension of the leave, but "that no job guarantee accompanies this extension." The Hospital requested a response from him within two weeks if he wished to continue in his position. Frank interpreted the Hospital's refusal to guarantee his employment after the extended leave period as a "coerced resignation or firing."

Leslie's complaints apparently also begin around the middle of the year 2001. In general, she claimed that she was subjected to a hostile work environment and was constructively discharged. First, she alleged that Frank's coworker, Jim Klein, attempted to force her to fire Jennifer Roth, a woman whom she had hired in her capacity as Director of the Hospital School. Leslie refused. Shortly thereafter, she alleged, Klein began telling Hospital employees that she "sat on his lap, in the presence of her husband, Frank Venezia, for the pur-pose of demeaning" Frank. Second, she alleged that she discovered notes directed toward Frank but making refer-ence to her, including one photograph of a "female body in a most vulgar way, which photograph was referenced to the plaintiff, Leslie Venezia." Third, she alleged that the tires of her car and those of one of her employees were slashed after she and the employee complained that money had been taken from the employee's desk. Leslie reported this incident to the Human Resources Department and impli-

cated Maintenance Department workers in the report. As with Frank's complaints, the Hospital took no corrective action, leading Leslie to resign on July 12, 2002.

Frank and Leslie both filed complaints with the Equal Employment Opportunity Commission (EEOC). Frank alleged that he had experienced sexual harassment and retaliation for complaining about the harassment, while Leslie alleged sexual harassment and constructive discharge. Frank received a Notice of Right to Sue from the EEOC on July 17, 2003, and Leslie received a separate Dismissal and Notice of Rights the same day.

The Venezias then filed a timely complaint against the Hospital, in which they were listed as co-plaintiffs. The district court, citing this court's decision in *Holman v. Indiana,* 211 F.3d 399 (7th Cir. 2000), granted the Hospital's motion under Rule 12(b)(6) to dismiss. The court read *Holman* to hold that a married couple bringing a single action could not establish that the same employer harassed them and discriminated against them on account of their sex in violation of Title VII. Such treatment, in the court's view, would necessarily be against both a man and a woman and therefore could not be based on sex.

It is not clear from the court's order whether it focused on the distinct claims that each person was asserting. In its order, the court explicitly dismissed without prejudice counts I and II of the complaint, which pertain only to Frank's claims. The order did not mention counts III and IV, which present Leslie's case, but the order did discuss facts pertinent to her case. Most important for purposes of our appellate jurisdiction, the conclusion stated that the court was granting the Hospital's motion to dismiss; reference to that motion shows that it related to the entire complaint. Furthermore, the docket sheet shows that the court entered judgment dismissing the case on March 17, 2004. We are therefore satisfied that the court disposed of

the entire case in its ruling and that the appeal is properly before us.

## II

On appeal, the central question is whether the district court correctly concluded that the *Holman* decision required dismissal of the Venezias' complaint. In *Holman,* husband and wife plaintiffs alleged that their supervisor at the Indiana Department of Transportation had sexually harassed each of them individually on separate occasions; they further claimed that because they had rejected his sexual advances, he had retaliated against each of them. 211 F.3d at 400-01. This court affirmed the district court's dismissal of the claim under Rule 12(b)(6). Relying on *Oncale v. Sundowner Offshore Services, Inc.,* 523 U.S. 75 (1998), we held that discrimination in sexual harassment cases "is to be determined on a gender-comparative basis: 'The critical issue, Title VII's text indicates, is whether members of one sex are exposed to disadvantageous terms or conditions of employment to which members of the other sex are not exposed.'" 211 F.3d at 403 (quoting from *Oncale,* 523 U.S. at 80, which in turn quoted from *Harris v. Forklift Sys., Inc.,* 510 U.S. 17, 25 (1993) (Ginsburg, J., concurring)) (emphasis markings deleted). The Holmans' claims, we concluded, were an example of the "equal opportunity harasser," and thus fell outside the reach of Title VII.

The Venezias concede, as they must, that their case has at least a superficial resemblance to *Holman*, because once again we see a husband and a wife simultaneously suing an employer for sexual harassment and related charges. They argue that their situation is different, however, because it does not involve a single supervisor. Instead, as the account of the facts above illustrates, each one suffered from distinct harassing actions, at the hands of different people, albeit with a certain amount of overlap.

Thus, *Holman* would govern their case only if the idea of the "equal opportunity harasser" could be extended from the individual harasser to the overall entity.

Such a step would be unwarranted, in our view. It would exclude the possibility of a lawsuit by a husband and wife employed by the same large company, in which the wife reports to Supervisor A, who discriminates against women, and the husband reports to Supervisor B, who discriminates against men. It is easy enough to see how both wife and husband could file separate suits against the company and pursue their claims. The fact that they have joined together as plaintiffs against a common defendant, where common issues of fact may include what kind of workplace harassment policy the employer had and how was it disseminated to the employees, makes no legal difference. See FED. R. CIV. P. 20(a) (permitting all persons to join in one action as plaintiffs if, among other things, "any" question of law or fact common to all these persons will arise in the action). Here, the allegations supporting Frank and Leslie's joined complaints are sufficiently distinct that it was error to dismiss them under Rule 12(b)(6).

In addition to *Holman,* the district court also relied on *Pasqua v. Metro. Life Ins. Co.,* 101 F.3d 514 (7th Cir. 1996), to support its result. There too, anticipating *Oncale*, we ruled that "[h]arassment that is inflicted without regard to gender, that is, where males and females in the same setting do not receive disparate treatment, is not actionable because the harassment is not based on sex." *Id.* at 517. Relying on that principle, we found that workplace gossip based on a relationship between two workers (one male, one female) does not amount to sex discrimination. As we observed, "[t]here was not even a hint in the record that any rumors or vulgar statements concerning an illicit relationship between Pasqua and Vukanic were made *because* Pasqua was a male." *Id.* (emphasis in the original). Like

*Holman*, however, *Pasqua* postulates a male and a female in the "same setting." This does not preclude vicarious liability for the employer with respect to two related employees who are in different settings, reporting to different supervisors, with different co-workers.

Although we have rejected the primary ground on which the district court relied for its judgment, we must also address the Hospital's alternative argument, which is that the complaint was insufficient in any event to state a claim under Title VII for either Frank or Leslie. We look first at the allegations pertaining to Frank, and then to those involving Leslie.

Frank alleged numerous instances of harassment that he claimed occurred "because of his sex," some of which were attributable to coworkers and others to his supervisor. This was more than enough to put the Hospital on notice of the kind of claim he was raising and of what he asserts it did wrong. As his employer, the Hospital is strictly liable for the actions of its supervisors, subject to certain affirmative defenses that are not relevant at this stage of the case. See *McPherson v. City of Waukegan,* 379 F.3d 430, 439 (7th Cir. 2004). It is also liable for the actions of his coworkers if it negligently failed to discover or remedy them. *Williams v. Waste Mgmt. of Ill.,* 361 F.3d 1021, 1029 (7th Cir. 2004).

Even if one assumed that Frank's work environment in the Maintenance Department was unisex, *Oncale* supports a claim that he was harassed "because of his sex." The Court explained there that although "male-on-male sexual harassment in the workplace was assuredly not the principal evil Congress was concerned with when it enacted Title VII," a hostile work environment claim is nevertheless possible even when the harasser is of the same sex as his victim. *Oncale,* 523 U.S. at 79. Frank's complaint, construed in the light and with the inferences most favorable to him, states a claim under Title VII. See *Bennett v.*

*Schmidt,* 153 F.3d 516, 518 (7th Cir. 1998) (describing the statement "I was turned down for a job because of my race" as sufficient to state a Title VII claim and overcome a Rule 12(b)(6) motion).

Leslie's case may be somewhat closer to the line, but we conclude that she too has alleged enough to satisfy the notice pleading requirements that prevail in federal court. She does not appear to assert that any supervisor has harassed her, but as we just noted, Title VII also makes an employer vicariously liable for coworker harassment if it was "negligent either in discovering or remedying the harassment." *Mason v. Southern Ill. Univ. at Carbondale,* 233 F.3d 1036, 1043 (7th Cir. 2000) (quoting *Parkins v. Civil Constructors of Ill., Inc.,* 163 F.3d 1027, 1032 (7th Cir. 1998), which in turn was quoting from *Perry v. Harris Chernin, Inc.,* 126 F.3d 1010, 1013 (7th Cir. 1997)). Like Frank, she asserts that a variety of harassing events took place at the workplace "because of her sex." Although further development of the case may reveal that some or all of the alleged harassment was unrelated to Leslie's sex, or that it was the type of low-level annoyance that is not actionable, it is too soon for us to draw that conclusion. Importantly, unlike the coworkers in *Pasqua* and the spouses in *Holman,* Leslie alleges some instances of harassment that were unique to her.

Last, we touch briefly on the Hospital's effort to eliminate the sexual harassment claims against it. It argues that neither of the Venezias can demonstrate an adverse employment action and that this is something that must appear even in their pleadings. But, stressing as we have throughout that we are only at the initial stage of this litigation, they have each alleged enough to satisfy their burden under FED. R. CIV. P. 8(a). A hostile work environment can become so severe that it gives rise to a constructive discharge, which is an adverse employment action. See *Herron v. DaimlerChrysler Corp.,* 388 F.3d 293,

303 (7th Cir. 2004); see also *Pennsylvania State Police v. Suders*, 124 S. Ct. 2342, 2355 & n.9 (2004); *EEOC v. Univ. of Chicago Hosp.*, 276 F.3d 326, 331 (7th Cir. 2002) (observing constructive discharge is a materially adverse employment action). Both Frank and Leslie have alleged that this occurred, in different ways. Frank claims that the way that the Hospital handled his medical leave was either a disguised firing or a constructive discharge, while Leslie argued that its toleration of the pornographic photographs associated with her, along with violence such as the tire-slashing, left her with no choice but to depart.

### III

Briefly put, the district court erred in believing that the existence of husband and wife co-plaintiffs in the same Title VII suit against a single defendant was enough, in itself, to render the case deficient as a matter of law. Moreover, as a matter of pleading, both plaintiffs have stated a claim upon which relief may be granted. We therefore REVERSE and REMAND this case for further proceedings consistent with this opinion.

A true Copy:

Teste:

_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*