**TRUCK INSURANCE EXCHANGE, Aurora, Illinois, Appellant,**

v.

**WEBB TRANSFER LINE, INC., Shelbyville, Kentucky, Appellee.**

Court of Appeals of Kentucky.

May 24, 1968.

As Modified on Denial of Rehearing Oct. 25, 1968.

Jerry A. Lloyd, Goldberg & Lloyd, Louisville, for appellant.

H. B. Kinsolving, III, Kinsolving & Kinsolving, Shelbyville, for appellee.

PALMORE, Judge.

This is a suit by an insurance company, Truck Insurance Exchange (hereinafter

TIE) against a motor carrier (hereinafter Webb) for the unpaid balance of premiums alleged to be due under a liability insurance policy issued to Webb by TIE as of June 2, 1960, and cancelled on December 1, 1961. Webb counterclaimed for an alleged overpayment. After a jury had returned an anomalous verdict the trial court sustained Webb's motion for a judgment n. o. v. in the amount of its counterclaim. Each party had duly moved for a directed verdict. TIE's motion for a judgment n. o. v. in the amount of its claim was overruled. TIE appeals.

The facts and figures are virtually undisputed. The only real issue is one of law, involving construction of the terms of the policy. TIE contends that the premiums due under the contract totalled $83,499.58 and concedes it has been paid $70,086.44, leaving a balance of $13,413.14. Webb contends the correct sum of premiums payable was $60,474.90 and, therefore, that it overpaid $9,611.54, which is the amount of the judgment.

It is our conclusion that TIE's construction of the contract is correct and that Webb owes it $13,413.14.

A retrospective premium adjustment endorsement attached to the policy provides two sets of rates, one for liabilities aggregating $10,000 or less per single occurrence and the other for liabilities in excess of $10,000 (subject to a maximum of $1 million) per single occurrence, as follows (with our emphasis added):

"As respects the first $10,000.00 aggregate liability from one occurrence, it is agreed that on or before the 25th day of each month during the currency of this policy the Named Insured shall render to the Exchange a statement showing the gross operating revenue of the business of the Named Insured, whether collected or not, earned during the preceding month and the standard premium for each such preceding month shall be computed at the following rates per $100.00 of gross operating revenue so earned:

|  | Standard | (Basic) |
|---|---|---|
| Bodily Injury and Property Damage Liability | $ 4.13 | (2.75) |
| Comprehensive, Including Fire and Theft | $ – | ( – ) |
| Collision | $ – | ( – ) |
| Cargo | $ .75 | ( – ) |
| COMBINED RATE | $ 4.88 | (3.25) |

Such earned premium shall be payable to the Exchange forthwith and shall be subject to such adjustments *as are provided for in that certain Premium Determination Agreement entered into between the Named Insured and the Exchange dated 6–2–60.*

For policy limits in excess of $10,000.00 aggregate as respects any one occurrence, and *not subject to adjustment under said Premium Determination Agreement,* premium shall be payable monthly at the rate of $1.70 per $100.00."

The premium determination agreement mentioned in the premium adjustment endorsement actually was not executed by TIE until August 29, 1960, but it was made effective as of June 2, 1960, and obviously was contemplated from the beginning, as shown by the references to it in the premium adjustment endorsement.

TIE's evidence in chief was presented by one witness, R. W. Perry, Jr., its regional commercial manager. Webb's evidence also was given by one witness, J. B. Latham, an insurance agent who testified as an expert. Except for a difference of $314.64 the two witnesses agreed on the computation of the total amount of premiums payable under the premium determination agreement. Latham conceded that the only real issue in the case is whether the $1.70 rate provided in the premium adjustment endorsement (quoted above) for liabilities in excess of

$10,000 per single occurrence is payable in addition to the premiums payable under the premium determination agreement. His contention was that the provision in the premium adjustment endorsement for a flat rate of $1.70 per $100 of gross operating revenue for the $990,000 coverage in excess of $10,000 per single occurrence was superseded by the premium determination agreement. The comparative figures of the respective adversary witnesses were as follows:

|  | Perry | Latham |
|---|---|---|
| Payable per premium determination agreement | $60,789.54 | $60,474.90 |
| Payable per $1.70 flat rate for excess coverage | 22,710.04 | None |
| Totals | $83,499.58 | $60,474.90 |
| Credit for payments | 70,086.44 | 70,086.44 |
| Balance | $13,413.14 | ($ 9,611.54) |

———◆———

Roughly speaking for the sake of simplicity, the premium determination agreement provides that the "basic" premium is a provisional rate to be paid unless and until incurred losses (including reserves for unpaid and unreported losses) not exceeding $10,000 per single occurrence reach a ratio of 70% of premiums paid, after which the insured must pay additional premiums sufficient to reduce the loss ratio to 70% and to cover adjustment expenses and certain other charges, subject however to a maximum, which is the "standard" premium. Hence the most Webb could have been required to pay under this agreement on his total gross revenues of $1,335,844 for the period between June 2, 1960, and December 1, 1961, is 13358.44 x $4.88, or $65,189.-19 as compared with the total premium of $60,789.54 actually earned according to TIE's calculations, exclusive of the disputed flat rate of $1.70.

■ The difference of $314.64 between Perry and Latham reflected Latham's opinion that a certain reserve of about $3,900 had been caried longer than he thought was reasonable. We shall not devote much discussion to that item. Suffice it to say that the insurance company had the right to exercise its discretion in this respect. Moreover, Webb received monthly statements from TIE beginning as of November 30, 1961, on which this reserve was shown until eventually it was removed, and did not question it. As a matter of fact, the record suggests that until this suit was filed Webb's only reason for nonpayment of the whole bill as calculated by TIE was that Webb was short of cash.

■ With respect to the $1.70 flat rate, the net effect of Webb's contention as of today is that TIE covered the risk of any and all liabilities between $10,000 and $1 million per single occurrence for no consideration other than the premiums payable for liabilities of $10,000 or less per single occurrence. Latham did not attempt to explain his theory that the rate for coverage in excess of $10,000 per single occurrence was superseded by the premium determination agreement, and in the absence of further enlightenment in that respect we do not perceive any reasonable basis for it.

The judgment is reversed with directions to enter a judgment for TIE in the full amount of its claim.

All concur.