USCA1 Opinion

 

 UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT ____________________ No. 94-1853 COMMAND TRANSPORTATION INC., Plaintiff - Appellee, v. B.J.'S WHOLESALE CLUB INC., AMES DEPARTMENT STORES INC., MORSE SHOE INC., LIONEL LEISURE INC., AND HOME INSURANCE COMPANY, Defendants - Appellees. ____________________ LIBERTY MUTUAL INSURANCE COMPANY, Defendant - Appellant. ____________________ ERRATA SHEET The opinion of this court issued on August 9, 1995 is amended as follows: The coversheet should read "Hon. W. Arthur Garrity, Jr.". ___ UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT ____________________ No. 94-1853 COMMAND TRANSPORTATION INC., Plaintiff - Appellee, v. B.J.'S WHOLESALE CLUB INC., AMES DEPARTMENT STORES INC., MORSE SHOE INC., LIONEL LEISURE INC., AND HOME INSURANCE COMPANY, Defendants - Appellees. ____________________ LIBERTY MUTUAL INSURANCE COMPANY, Defendant - Appellant. ____________________ APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MASSACHUSETTS [Hon. W. Arthur Garrity, Jr., U.S. District Judge] ___________________ ____________________ Before Boudin, Circuit Judge, _____________ John R. Gibson* and Campbell, Senior Circuit Judges. _____________________ _____________________ David J. Daly, with whom John E. Lecomte, Timothy J. Daly ______________ _______________ ________________ and Lecomte, Emanuelson, Tick & Doyle, were on brief for _____________________________________ appellant Liberty Mutual Insurance Company. Kurt Terwilliger, with whom Richard D. Bickelman and Deutsch ________________ ____________________ _______ Williams Brooks DeRensis Holland & Drachman were on brief for _____________________________________________ appellee Command Transportation, Inc. ____________________ August 9, 1995 ____________________  ____________________ * Of the Eighth Circuit, sitting by designation. -1- JOHN R. GIBSON, Senior Circuit Judge. Liberty Mutual JOHN R. GIBSON, Senior Circuit Judge. ____________________ Insurance Company appeals from the district court's judgment denying its counterclaims against Command Transportation, Inc. to recover freight damage claims Liberty paid to Command's shippers and to collect insurance premiums from Command. Liberty argues that the district court erred: (1) in failing to reduce freight damage claims Liberty paid Command's shipping customers by the amounts the shippers owed Command for freight services; (2) in denying its motions to substitute or add the Resolution Trust Corporation as a defendant or third-party defendant; (3) in denying relief on Liberty's breach of contract claim against Command for unpaid insurance premiums; and (4) in ruling on issues of disputed material fact. We affirm the district court's judgment. It is unnecessary that we detail the complex facts underlying the relatively simple issues in this appeal. This litigation began when Command, an interstate trucking company, became insolvent and attempted to collect freight charges from its shippers, including B.J.'s Wholesale Club, Inc.; Lionel Leisure, Inc.; Morse Shoe, Inc.; and Ames Department Stores. These shippers filed counterclaims against Command for freight damage and losses. In 1980, Command had purchased a Motor Truck Cargo Policy from Liberty. As required by the Interstate Commerce Act, the policy contained an endorsement for cargo liability, commonly referred to as a "BMC-32 endorsement." 49 U.S.C. 10927 (a)(3)(1988). Under the BMC-32 endorsement Liberty was required to pay directly any freight damage claims of Command's shippers for which Command may have been liable. Further, the BMC-32 endorsement provided, in part: The insured agrees to reimburse [Liberty] for any payment made by [Liberty] on account of any loss or damage involving a breach of the terms of the policy and for any payment that [Liberty] would not have been obligated to make under the provisions of the policy, except for the agreement contained in this endorsement. The policy terminated on October 1, 1988, and was replaced by a similar policy issued by Home Insurance Company. Command sued Liberty and Home for breaching the insurance contract by failing to pay shippers directly for their lost or damaged freight. Although Liberty admittedly received the freight claims (and, in fact, paid some), Liberty argued that it was entitled to Command's accounts receivable from the shippers. Liberty alleged that a surety relationship existed between Command and Liberty by virtue of Liberty's payment of freight damage claims directly to the shippers under the BMC-32 endorsement. As surety of an insolvent principal, Liberty contended that it could set off Command's freight charge claims against Liberty's obligation to pay the shippers' freight damage claims. In 1986, Command entered into a revolving finance agreement with Comfed Savings Bank. The agreement granted Comfed a security interest in certain of Command's assets, including Command's accounts receivable. -3- By April 1989, Command was insolvent. Command sold its assets to Munson Transportation and paid the proceeds to Comfed. In December 1990, the RTC was named as conservator for Comfed, and, in September 1991, the RTC was appointed receiver. Liberty claimed that the RTC was the real party in interest which must be substituted for Command or added as a third-party defendant. During the litigation, the district court denied Liberty's motions to substitute the RTC for Command or to add the RTC as a third-party defendant. The court rejected Liberty's arguments that the RTC, through Comfed, was the real party in interest. Ultimately, the parties resolved all their respective claims, except for Liberty's counterclaims against Command for setoff and for breach of contract. The district court ordered that Command and Liberty file an agreed stipulation of facts. The parties could not agree to a joint stipulation of facts, so each party submitted its own proposed stipulation of facts. The proposed stipulations were almost identical except each party included some facts that the other party either disagreed with or did not address. After a hearing on March 28, 1994, the district court denied Liberty's counterclaims. Command Transportation Inc. v. _______________________________ B.J's Wholesale Club, Inc., Civ. No. 90-10188-G, slip op. at 16- __________________________ 17 (D. Mass. June 23, 1994). The court determined that the BMC- 32 endorsement obligated Liberty to pay shippers directly for freight damage and loss. The court ruled that although this -4- obligation may supersede other provisions of the insurance policy, "the endorsement must be read in conjunction with, not in lieu of, the policy." Id. at 9. The court based this ruling on ___ the endorsement, which stated: "[A]ll terms, conditions, and limitations in the policy to which this endorsement is attached are to remain in full force and effect." After discussing two cases considering earlier versions of the BMC-32 endorsement, In __ re Yale Express Sys., Inc., 362 F.2d 111 (2d Cir. 1966), and ____________________________ Empire Fire & Marine Ins. Co. v. J. Transport, Inc., 880 F.2d ______________________________________________________ 1291 (11th Cir. 1989), the court distinguished obligations arising from the policy and obligations arising from the endorsement. The court concluded that Liberty could be a surety, entitled to a setoff only for payments it made to shippers "solely" under the endorsement, and that Liberty failed to prove that it made payments solely under the endorsement. Slip op. at 13. The court determined that Liberty failed to classify its payments to shippers as an obligation from the endorsement or as an obligation from the policy. The court pointed out that Liberty omitted the cargo policy as an exhibit to the Stipulation of Facts, and attached only a one-page form: "Motor Truck Policy - Gross Receipts," which did not explain Liberty's obligation to pay claims under the policy. Id. The court ruled that Liberty ___ was not entitled to set off freight damage claims with Command's accounts receivable. The court acknowledged that Liberty could have a valid setoff claim "to the extent that its payments represent deductibles it would not have been obligated to pay -5- under the policy." Id. at 14. Once again, however, the court ___ concluded that Liberty failed to prove entitlement to a setoff. The court referred to an affidavit submitted by Liberty, to which Command did not stipulate, listing Liberty's total payments to each shipper. Id. Because the affidavit showed only total ___ payments, the court could neither determine if Liberty had already reduced the amount by the deductible, nor calculate the date, amount, or number of losses. Accordingly, the court concluded that there was no basis for ruling that Liberty was entitled to a setoff for the deductible amount. Id. at 14-15. ___ Liberty also claimed subrogation rights arising from indemnity agreements between it and Command, whereby Command agreed to indemnify Liberty for any monies paid by Liberty in connection with "bonds, undertakings and/or obligations of suretyship or guarantee" issued on behalf of Command. Because Liberty's recovery under this provision depended on proving a surety relationship, the court did not address Liberty's claim of subrogation. Id. at 15. The court explained that a further ___ obstacle to Liberty's claims existed because a non-party, the RTC, held a secured interest in Command's accounts receivable. Id. at 16. ___ Finally, the court held that Liberty failed to prove its breach of contract claim. Id. The court reasoned that the ___ sole item of evidence, a September 20, 1989, Statement of Account, did not prove that Command owed Liberty premiums under the policy that lapsed in 1988. Without the terms of the policy, -6- including proof of coverage dates, the court refused to speculate whether Command had failed to pay premiums due. Id. at 17. ___ Liberty filed a motion to amend judgment. At a hearing on a different motion, Liberty's counsel stated that he did not expect the court to enter judgment on the basis of stipulated facts but thought there would be a trial. The district court judge found this statement inconsistent with his recollection of the March 28, 1994 proceedings when Liberty's counsel remained silent after Command's counsel stated he expected the court to enter judgment on the basis of the stipulated record. The court construed Liberty's silence as assent. The district court denied Liberty's motion, and Liberty appeals. I. I. In its reply brief, Liberty contends that the parties did not authorize the district court to decide disputed material facts. Liberty asserts that although the parties wanted the district court to decide the case based on stipulated facts, the parties did not agree to stipulated facts. Arguing that the standard governing the granting of a summary judgment motion applies, Liberty contends that the district court erred by ruling on material issues of genuine fact without a trial. Liberty agreed, however, for the district court to decide the case on the record before it. The first paragraph in Liberty's memorandum submitted to the district court in support of judgment in its favor states: The following memorandum is submitted pursuant to the agreement between -7- [Command] and [Liberty] that all remaining issues in this case be decided by the Court based upon a Stipulation of Facts. No final agreement on the Stipulation of Facts was reached by the deadline imposed by the Court, so the references in this memorandum are to the "Stipulation of Facts" filed by Liberty on March 23, 1994. Liberty also relies on its previous briefs filed with respect to this matter. The record of the March 28 proceedings also shows that Liberty expected the court to decide the case based on the record before it. At the hearing, the district court judge asked: "What are we doing here this afternoon?" The judge questioned whether the proceedings were pretrial, cross motions for summary judgment, or trial of the case. Command's counsel responded that the court directed the parties to submit a stipulation of facts and brief the issue of liability on Liberty's counterclaims. The court then explained that it was unsure where to turn for evidence of the payments, receipts and dates, and asked if the submitted filings identified the amounts that Liberty, or anyone else, paid the shippers. Command's counsel answered that Liberty's affidavit showed the amounts Liberty paid and that Command did not intend to submit further documentation. Liberty's counsel agreed that he addressed every issue Command raised in its briefs. After discussing the merits of various issues, the court asked Liberty's counsel what he sought. Liberty answered: "any monies which went to Command or may go to Command in the future which were subject to the shipper's right to setoff." -8- Furthermore, the district court's June 23, 1994, decision made twenty-three findings of fact, incorporating all of the stipulations of facts submitted by Liberty in its March 24, 1994 filing, except for Liberty's proposed stipulation that Command had not paid certain premiums due. Liberty's argument in this appeal does not identify a disputed issue of material fact it claims to be wrongly decided by the district court.1 We therefore reject Liberty's argument that the district court erred by deciding this case and, indeed, are left with the impression that Liberty has been less than candid in urging this position. II. II. Liberty argues that the BMC-32 endorsement created a surety relationship between Liberty and Command, and that the district court's finding of no suretyship is clearly erroneous. Liberty contends that, as Command's surety, it is entitled to assert the shippers' right to set off unpaid freight charges. The case law unequivocally supports the district court's view that the mere existence of the BMC-32 endorsement does not give rise to a surety relationship entitling Liberty to set off its obligation to pay freight damage claims. A suretyship is created only after the insurer makes a payment  ____________________ 1 Having failed to identify any material factual dispute, Liberty's arguments that the district court should have viewed the proceedings as cross-motions for summary judgment and held a trial on the merits are contradictory. See Boston Five Cents ___ __________________ Sav. Bank v. Dep't of Housing & Urban Dev., 768 F.2d 5, 11-12 _____________________________________________ (1st Cir. 1985) (discussing difference between decisions based on cross-motions for summary judgment and those based on a stipulated record). -9- required solely under the endorsement, in other words, a payment the insurer "would not have been obligated to make under the provisions of the policy." The Second Circuit considered an earlier version of the BMC-32 endorsement in In re Yale Express, 362 F.2d 111. That ___________________ endorsement required the carrier to reimburse the insurer "for any payment that the [insurer] would not have been obligated to make under the provisions of the policy, except for the agreement contained in the endorsement." Id. at 113. After the carrier ___ went bankrupt, the shippers asserted claims for lost and damaged freight. Id. The carrier and insurer asserted conflicting ___ positions. The carrier demanded that the shippers pay all freight charges to it. Id. The insurer asserted that it could ___ set off freight damage claims with the carrier's claims against the shippers for unpaid freight. Id. The Second Circuit held ___ that the insurer was a surety only for the claims it paid solely under the endorsement, not to those claims it paid also required by the policy. Id. at 114. The court explained that suretyship ___ exists when "'one person has undertaken an obligation and another person is also under an obligation or other duty to the obligee, who is entitled to but one performance, and as between the two who are bound, one rather than the other should perform.'" Id. ___ (quoting Restatement of Security 82 (1941)). The court reasoned that, although the insurer and carrier were both obligated to the shipper, the carrier's promise to reimburse the insurer for any payments made solely by virtue of the endorsement -10- made the carrier, not the insurer, the principal who "should perform." Id. The court distinguished claims that the insurer ___ paid under the endorsement exceeding the deductible: "[the insurer's] position under the endorsement differs wholly from its status with respect to claims exceeding [the deductible]; as to the latter it is an indemnitor," not a surety. Id. at 114 n.1. ___ Because the deductible is an amount which the insurer would "not otherwise be obligated to pay" except for the endorsement, the insurer had surety status only for the deductible amount. Id. ___ The Eleventh Circuit rejected the very argument Liberty makes here in Empire Fire & Marine, 880 F.2d 1291. The court _____________________ remanded that case, in part, for a determination of whether the insurance policy covered the loss at issue. Id. at 1298. ___ Likewise, in American Inter-Fidelity Exch. v. American Re- __________________________________________________ Insurance Co., 17 F.3d 1018 (7th Cir. 1994), the Seventh Circuit _____________ interpreted language virtually identical to the BMC-32 endorsement, concluding that an insurer is a surety only for the deductible under the endorsement, the amount it would not have been obligated to pay under the policy. Id. at 1022. Accord ___ ______ Ford Motor Co. v. Transport Indem. Co., 41 B.R. 433, 439 (E.D. ________________________________________ Mich. 1984), rev'd on other grounds, 795 F.2d 538 (6th Cir. ________________________ 1986). Cf. Eastern Freight Ways, Inc. v. Seaboard Surety Co., ___ ___________________________________________________ 577 F.2d 175, 180 n.9 (2d Cir. 1978) (surety relationship established because of issuance of bonds for cargo claims). Because Liberty may be a surety only to the extent its payments to shippers represent payments required "solely" under -11- the endorsement, we have no difficulty rejecting Liberty's argument that the district court erred in requiring it to distinguish between policy and endorsement obligations. Liberty contends that Command did not allege that Liberty's liability arose from anything other than the endorsement. Liberty points out that, when it was called on to directly pay the shippers, Command had already cancelled and replaced the cargo policy. Thus, Liberty contends that the district court erred in requiring proof that Liberty had no obligation to pay the shippers under the policy.  Liberty's argument is circular. The endorsement, just as in Yale Express and Empire Fire & Marine, specifically limits ____________ ____________________ Liberty's right to reimbursement from Command to payments Liberty would not have been obligated to pay under the policy, and Liberty bore the burden of proving entitlement to setoff. Reliance Steel Prod. Co. v. National Fire Ins. Co., 880 F.2d 575, __________________________________________________ 577-78 (1st Cir. 1989). Liberty neglected to specify whether its payments to shippers were also obliged under the policy. See In ___ __ re Yale Express, 362 F.2d at 114 n.1 (insurer not a surety for _______________ amounts in excess of deductible under endorsement); American ________ Inter-Fidelity Exch., 17 F.3d at 1022 (insurer is a surety only ____________________ for deductible under endorsement). We similarly reject Liberty's argument that suretyship and insurance cannot co-exist and that, therefore, its right to setoff is not subject to the insurance provisions of the cargo policy. This argument is inconsistent with the cases -12- interpreting the BMC-32 endorsement and irreconcilable with the language of the endorsement providing that "all terms, conditions, and limitations in the policy . . . remain in full force and effect." See Empire Fire & Marine, 880 F.2d at 1298 ___ _____________________ (regulations which require the endorsement "do not alter or affect the obligations between the insured and the insurer"); American Inter-Fidelity Exch., 17 F.3d at 1022 (same). _____________________________ -13- III. III. Liberty next argues that the district court clearly erred in finding that the evidence was insufficient to prove Liberty's counterclaim for premiums owed by Command under the policy.  Liberty sought $656,330.04 in premiums allegedly owed by Command under the cargo policy. The district court noted that the "only policy before the Court is the Motor Truck Policy . . . issued on November 1, 1980 and numbered K01-712-001357-04." Slip op. at 16-17. The district court found that the only evidence offered by Liberty to support its breach of contract claim was a September 20, 1989, Statement of Account. Id. at 16. The ___ Statement of Account listed several policy numbers, and the only policy number in the two-page statement which corresponded to the policy number on the face of the policy differed by one digit and listed a "Retro Adjustment" in the amount of $186,159. The district court concluded that the evidence did not show that Command continues to owe premiums under the policy which terminated in 1988, only that Liberty made a "retro adjustment" to that policy. During the hearing, the district court asked counsel which page of the policy defined "premiums owed under the policy." Liberty's counsel remained silent when counsel for Command stated that "it's not [Command's] burden" but "if there is an answer to that question I would guess it would be located in the policy." -14- On appeal, Liberty explains only that a "retro adjustment is an increased premium owed by an insured based on the cost to the insurer as shown by actual experience," and that the "retro adjustment amounts listed on the Statement of Account are 'Payable on Receipt.'" Liberty explains that the total retroadjustments reflected in the Statement of Account are all premiums for policies that are part of the cargo policy and, therefore, Liberty should be awarded $444,262 on its breach of contract claim. The shortfall of Liberty's contentions is that it has presented no evidence to explain how it calculated the "retro adjustment" or why Command still owes premiums under the 1988 insurance policy.2 Therefore, the district court did not err in concluding that there was insufficient evidence to support Liberty's breach of insurance contract claim. IV. IV. Finally, Liberty alleges numerous errors in the district court's refusal to substitute the RTC as the real party in interest or to add the RTC as a party under Fed. R. Civ. P. 17(a), 19, and 20. Liberty alleges that Comfed, and subsequently the RTC, is the real party in interest. Liberty also contends that the RTC, acting through the corporate shell of Command, attempts, through this litigation, to force Liberty to pay the shippers' claims so that the RTC may collect the full accounts  ____________________ 2 Liberty's citation to Truck Ins. Exch. v. Webb Transfer Line, ________________________________________ Inc., 432 S.W.2d 25, 26 (Ky. Ct. App. 1968), is unpersuasive. In ____ that case, the parties did not dispute the computation of the total amount of premiums payable, and the insurer presented testimony as to the premium computation. Id.  ___ -15- receivable due from the shippers free from Liberty's right to set off. Liberty contends that the RTC's collection without affording notice or the opportunity to be heard deprived Liberty of its property in violation of the Fifth and Fourteenth Amendments to the United States Constitution. Because Liberty failed to prove entitlement to a setoff against Command's bankruptcy estate, Liberty's efforts to make the RTC a party necessarily fail. In any event, we are persuaded that a number of other reasons support the district court's refusal to substitute or add the RTC as a party or a third-party defendant, including Liberty's failure to exhaust administrative remedies, see, e.g., Marquis v. FDIC, 965 F.2d 1148, 1151 (1st ___ ____ ________________ Cir. 1992), or to explain the superiority of its alleged interest. See In re Yale Express, 362 F.2d at 117. ___ __________________ We affirm the district court's judgment. ______ -16-