FILED

NOT FOR PUBLICATION

NOV 6 2013

SUSAN M. SPRAUL, CLERK
U.S. BKCY. APP. PANEL
OF THE NINTH CIRCUIT

## UNITED STATES BANKRUPTCY APPELLATE PANEL

## OF THE NINTH CIRCUIT

| | |
|---|---|
| In re: ) | BAP No. EC-12-1506-PaJuKi |
| ) | |
| DERRICK CLINTON DANIELL, dba ) | Bk. No. 11-62881 |
| Mesquite Enterprises, Inc., ) | |
| dba Mesquite Custom Carts, ) | Adv. No. 12-1045 |
| dba Infinity Transport, Inc., ) | |
| dba Derrick Ranches, ) | |
| ) | |
| Debtor. ) | |
| _____ ) | |
| ) | |
| FO-FARMER'S OUTLET, INC., ) | |
| ) | |
| Appellant, ) | |
| ) | |
| v. ) | **M E M O R A N D U M**[1] |
| ) | |
| DERRICK CLINTON DANIELL, ) | |
| ) | |
| Appellee. ) | |
| _____ ) | |

Argued and Submitted on October 18, 2013
at Sacramento, California

Filed - November 6, 2013

Appeal from the United States Bankruptcy Court
for the Eastern District of California

Honorable W. Richard Lee, Bankruptcy Judge, Presiding

Appearances:     Effie F. Anastassiou of Anastassiou & Associates
                 argued for appellant FO-Farmer's Outlet, Inc.
                 Justin D. Harris of Motschiedler, Michaelides,
                 Wishon, Brewer & Ryan, LLP argued for appellee
                 Derrick Clinton Daniell.

Before: PAPPAS, JURY and KIRSCHER, Bankruptcy Judges.

---

[1] This disposition is not appropriate for publication.
Although it may be cited for whatever persuasive value it may
have (see Fed. R. App. P. 32.1), it has no precedential value.
See 9th Cir. BAP Rule 8013-1.

Appellant Fo-Farmers Outlet, Inc. ("FFO") appeals the order of the bankruptcy court dismissing its exception to discharge complaint under Civil Rule 12(b)(6),[2] as incorporated in Rule 7012, and refusing to allow FFO to further amend its complaint.  We AFFIRM.

**FACTS**

FFO is a vegetable merchant wholesale supplier which provides packaging materials for produce.  Debtor Derrick Clinton Daniell ("Daniell")[3] is a produce contractor.  On August 8, 2008, FFO entered into a credit agreement with Daniell.  Although the record is generally silent on the relations between Daniell and FFO until 2010, FFO concedes that Daniell paid for all packaging materials ordered on credit from FFO for the first two years of the credit agreement, although "often" Daniell's payments were late.

On September 28, 2010, Daniell sent a memorandum to FFO outlining Daniell's anticipated packaging material requirements for October 2010 ("Projection Memorandum").  The parties agree that they communicated regarding Daniell's produce contracts in Mexico, after FFO received the Projection Memorandum, but before

---

[2]  Unless otherwise indicated, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101–1532 and "Rule" references are to the Federal Rules of Bankruptcy Procedure.  The Federal Rules of Civil Procedure are referred to as "Civil Rules."

[3]  Daniell did business as, and FFO entered into the credit agreement with, Mesquite Enterprises, Inc., a business owned by Daniell.  Unless there is a need to distinguish among them, we will refer to Daniell's business enterprises collectively as "Daniell."

the materials were shipped to him. Between October 10, 2010, and November 16, 2010, FFO shipped a large quantity of packaging materials to Daniell.

On December 23, 2010, Daniell visited Mr. Angulo, FFO's representative, and informed him that Daniell's Mexican contracts were not meeting projections. Then, in January 2011, Daniell sent several emails to FFO. A January 8, 2011 email reads:

> Our melon program in Mexico has not worked out as forecasted. All I can commit to you now is the following: I will get you out at least $2500 each week or more if I have it. If this will not work out for you I will make arrangements with you to return the remaining inventory to your yard in Holtville where ever you want me to deliver them.

FFO alleges that in April 2011, it learned that Daniell's representations concerning his alleged contracts in Mexico were false; that any contracts Daniell previously had in Mexico were permanently disrupted or terminated; and that Daniell would not be getting any proceeds from the sale of Mexican crops to pay for the packaging materials. Sometime in April 2011, FFO inspected Daniell's remaining packaging inventory that had not been shipped to Mexico at the Garayzar Yard in Nogales, Arizona. FFO attempted to recover that inventory but was unsuccessful.

FFO filed a state court lawsuit against Daniell on April 21, 2011, alleging breach of contract, common counts, and breach of oral guaranty against Daniell. FO-Farmer's Outlet, Inc. v. Mesquite Enters., Inc., Case no. ECU06380 (Imperial County Superior Court). FFO sought a judgment for $333,990.70, the past due amount on the packaging materials. After the suit was filed, Daniell authorized FFO to pickup some of the remaining inventory of packaging materials, resulting in a credit against the amount

-3-

owed of $105,548.17. On June 1, 2011, a default judgment was entered by the state court against Daniell in the amount of $238,341.26.

Thereafter, FFO collected $7,728.00 and $14,988.00 through levy before Daniell filed a petition for relief under chapter 7 on November 30, 2011. Daniell's Schedule F listed an undisputed, liquidated, noncontingent claim in favor of FFO for $247,200.00, and the Statement of Financial Affairs listed the state court action and judgment in the amount of $238,000.00. FFO alleges that the current balance due on the state court judgment is $224,650.62.

FFO commenced an adversary proceeding against Daniell on March 7, 2012, seeking an exception to discharge of the debt owed to it by Daniell under § 523(a)(2) and (a)(6).[4] Daniell filed an answer on March 23, 2012, admitting that he was indebted to FFO, but generally denying the allegations in the complaint.

The bankruptcy court conducted a status conference on May 11, 2012. During the conference, the court sua sponte dismissed FFO's fraud claims under § 523(a)(2), with leave to amend, because they had not been pled with particularity.

FFO filed a first Amended Complaint on May 24, 2012 ("FAC"). The first claim of the FAC reasserted and provided additional factual support for FFO's claim against Daniell for actual fraud

---

[4] There is very little information in the record concerning the original and first amended complaints. Since this appeal partly turns on the number of complaints filed, we have exercised our discretion to consult the docket of the adversary proceeding concerning those documents. O'Rourke v. Seabord Sur. Co. (In re E.R. Fegert, Inc.), 887 F.2d 955, 957-58 (9th Cir. 1988).

under § 523(a)(2)(A).  The FAC added a second fraud claim under § 523(a)(2)(B), alleging that Daniell had made misrepresentations to FFO about its finances in written documents (i.e., the emails) on which FFO had relied to its detriment.  A third claim was asserted under § 523(a)(6).

Daniell filed a motion to dismiss the FAC under Civil Rule 12(b)(6), incorporated by Rule 7012, on June 11, 2012. Daniell argued that neither of the § 523(a)(2) fraud claims had been pled with the requisite particularity, and that the § 523(a)(6) was also pled in conclusory statements.

At the hearing on the motion to dismiss on July 11, 2012, the bankruptcy court dismissed with prejudice FFO's second claim for relief under § 523(a)(2)(B) and dismissed the claims under § 523(a)(2)(A) and (a)(6) with leave to amend.  We do not have access to a transcript of that hearing in the record or docket and cannot determine why the bankruptcy court made its decisions.

FFO filed a Second Amended Complaint ("SAC"), the complaint which is the focus of this appeal, on August 1, 2012.  The SAC appears to offer the same factual allegations and arguments regarding § 523(a)(2)(A) and (a)(6) as in the original complaint and FAC.  However, the second claim was now presented as an additional actual fraud claim under § 523(a)(2)(A).

On August 14, 2012, Daniell filed another motion to dismiss the SAC under Civil Rules 12(b)(6).  Daniell's argument was that, though FFO had three opportunities to do so, the SAC still failed to allege its fraud claims with particularity as required by Rule 9(b), as incorporated by Rule 7009, and that it failed to adequately allege a claim for conversion, and thus, failed to

-5-

state a claim for relief under § 523(a)(6).

FFO submitted an opposition to the dismissal motion on August 29, 2012. FFO asserted that it had pled sufficient facts to establish fraud in its first two claims. As to § 523(a)(6), FFO argued that the claim asserted all necessary elements to establish the tort of conversion under California law.

The bankruptcy court hearing on Daniell's motion to dismiss the SAC took place on September 13, 2012. As to the § 523(a)(6) claim, the court ruled that the SAC's allegations did not establish a conversion because it did not demonstrate that FFO had a right to possession or ownership of the packaging materials it alleged were converted by Daniell.

As to the first § 523(a)(2)(A) claim, the court found that the pleadings "strongly suggested" that at the time the alleged misrepresentations were made by Daniell, he did in fact have contracts for the sale of the inventory in Mexico. And as to the second § 523(a)(2)(A) claim, the court found that FFO's assertion that it was fraudulently induced not to enforce its remedies was not correct, in that FFO did in fact effect repossession of what inventory was still available. As to both fraud claims, the court and counsel for FFO engaged in the following colloquy:

> THE COURT: See, everything — the problem is, you didn't plead this complaint with specificity. It's a rambling novel of all the things your client's unhappy about, and — and you talk about those representations. I can't tell from this complaint which representations you're talking about.
>
> BEALS (counsel for FFO): All of the representations relating to the projection memo and, immediately subsequent to that, the confirmation of the contacts in Mexico, and the ability to pay, that only relates to the first cause of action. Everything else beyond that relates to the second cause of action, and I'm sorry that I didn't clearly articulate that.

-6-

THE COURT: This is the second amended complaint, counsel. We've already talked about these issues when I dismissed the prior two complaints.

BEALS: I understand that, Your Honor. But I — because I did not sufficiently articulate these two things, I — I would like the opportunity to come back and — and try to clear up some of the issues that you've raised, at least as far as the first and second cause of action.

THE COURT: Well, I'm going to dismiss the complaint without leave to amend.

Hr'g Tr. 9:13—10:22, September 13, 2012.

The bankruptcy court entered an order dismissing the SAC with prejudice on September 14, 2012. FFO filed a timely appeal on September 28, 2012.

## JURISDICTION

The bankruptcy court had jurisdiction under 28 U.S.C. §§ 1334 and 157(b)(2)(I). We have jurisdiction under 28 U.S.C. § 158.

## ISSUES

Whether the bankruptcy court erred in dismissing FFO's complaint seeking exceptions to discharge under § 523(a)(2)(A) and (a)(6) for its claim against Daniell.

Whether the bankruptcy court abused its discretion in refusing to allow FFO to file a third amended complaint.

## STANDARD OF REVIEW

The bankruptcy court's dismissal of an adversary proceeding under Civil Rule 12(b)(6) is reviewed de novo. Barnes v. Belice (In re Belice), 461 B.R. 564, 572 (9th Cir. BAP 2011).

We review the bankruptcy court's decision not to grant leave to amend a complaint for abuse of discretion. Ditto v. McCurdy, 510 F.3d 1070, 1079 (9th Cir. 2007).

A bankruptcy court abuses its discretion if it applies an incorrect legal standard, or misapplies the correct legal standard, or if its factual findings are illogical, implausible or without support from evidence in the record. TrafficSchool.com v. Edriver Inc., 653 F.3d 820, 832 (9th Cir. 2011) (citing United States v. Hinkson, 585 F.3d 1247, 1262 (9th Cir. 2009)(en banc)).

**DISCUSSION**

Under Civil Rule 12(b)(6), made applicable in adversary proceedings via Rule 7012, a bankruptcy court may dismiss a complaint if it fails to "state a claim upon which relief can be granted." In reviewing a Civil Rule 12(b)(6) motion, the trial court must accept as true all facts alleged in the complaint and draw all reasonable inferences in favor of the plaintiff. Maya v. Centex Corp., 658 F.3d 1060, 1068 (9th Cir. 2011); Newcal Indus., Inc. v. Ikon Office Solutions, 513 F.3d 1038, 1043 n.2 (9th Cir. 2008). However, the trial court need not accept as true conclusory allegations in a complaint, or legal characterizations cast in the form of factual allegations. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555-56 (2007); Warren v. Fox Family Worldwide, Inc., 328 F.3d 1136, 1139 (9th Cir. 2003).

To avoid dismissal under Civil Rule 12(b)(6), a plaintiff must aver in the complaint "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570). It is axiomatic that a claim cannot be plausible when it has no legal basis. A dismissal under Civil Rule 12(b)(6) may be based on either the lack of a cognizable

-8-

legal theory, or on the absence of sufficient facts alleged under a cognizable legal theory. <u>Johnson v. Riverside Healthcare Sys.</u>, 534 F.3d 1116, 1121 (9th Cir. 2008).

**I.**
**The bankruptcy court did not err in dismissing**
**FFO's claims under § 523(a)(2)(A) and (a)(6).**

**A. The First Claim for Relief.**

Section 523(a)(2)(A) provides that: "A discharge . . . does not discharge an individual debtor from any debt . . . (2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained, by — (A) false pretenses, a false representation, or actual fraud[.]" To demonstrate that a debt should be excepted from discharge under § 523(a)(2)(A), a creditor must prove five elements: (1) a misrepresentation, fraudulent omission or deceptive conduct by the debtor; (2) debtor's knowledge of the falsity or deceptiveness of the statement or conduct at the time it occurred; (3) debtor's intent to deceive; (4) justifiable reliance by the creditor on the debtor's statement or conduct; and (5) damage to the creditor proximately caused by its reliance on the debtor's statement or conduct. <u>Ghomeshi v. Sabban (In re Sabban)</u>, 600 F.3d 1219, 1222 (9th Cir. 2010); <u>Oney v. Weinberg (In re Weinberg)</u>, 410 B.R. 19, 35 (9th Cir. BAP 2009). All five elements must be asserted in the creditor's complaint for an exception to discharge, and the creditor bears the burden of proving each element by a preponderance of the evidence. <u>Grogan v. Garner</u>, 498 U.S. 279, 291 (1991); <u>In re Weinberg</u>, 410 B.R. at 35.

In FFO's first claim in the SAC, it asserts that Daniell

made fraudulent representations to FFO in connection with his purchase of the packaging materials and the delivery of those materials to Daniell. The SAC alleges that those fraudulent representations were, generally, that Daniell had contracted with various Mexican farmers to sell him a very large quantity of watermelons and honeydew melons, and that those contracts would continue into 2011. Daniell allegedly made these false representations in the Projections Memorandum, and in his conversations with FFO representatives thereafter.

Within the first claim, FFO alleged that "Debtor further represented in the winter of 2010-2011, both orally and in writing, that he had contracted to sell the Mexico Crops through the middle of 2011 from specific regions in Mexico" and that "[i]n reliance on these representations, FFO shipped packaging materials, on credit, between 10/14/10 — 11/19/10. At the time Debtor made these representations, they were false. During this time period, Debtor in fact ceased to have active operations in Mexico and no ability to pay for the packaging materials he ordered."

In reviewing Daniell's motion to dismiss this claim, the bankruptcy court highlighted a fundamental problem with FFO's complaint:

> How do you reconcile [] the reference to "at the time" and then say "during this time period," because the time period you're complaining about took place over six months. . . . You didn't plead this complaint with specificity. It's a rambling novel of all the things your client's unhappy about, and — and you talk about those representations. I can't tell from this complaint which representations you're talking about.

Hr'g Tr. 8:21—9:21.

We understand why the bankruptcy court was perplexed by the inconsistences in the facts alleged by FFO regarding when Daniell made the allegedly false representation on which FFO relied.

At paragraph 14 of the SAC, FFO asserts:

> In April 2011 . . . FFO learned that although Mesquite and/or Debtor had previously entered into contracts with growers in Mexico, they had not properly accounted for the sale of the produce to the Mexican growers and had not fully paid the growers for the produce.  As a result, the growers had prematurely terminated their contracts with Debtor, but Debtor failed to disclose these premature terminations of the contracts to FFO.

In paragraph 14, FFO concedes that there were contracts in place between Daniell and the Mexican growers at some time.  Neither in paragraph 14 nor at any point in the SAC does FFO state with specificity the date(s) when those contracts were "prematurely terminated."

Then, in paragraph 25 of the SAC, FFO recites:

> On September 28, 2010, when Debtor sent the Projection Memo, Debtor represented to FFO that he had contracted to sell a very large quantity of watermelons and honeydews being produced in numerous regions in Mexico, and that these contracts for production of crops would extend into 2011.  As set forth above, Debtor further represented in the winter of 2010-2011, both orally and in writing, that he had contracted to sell the Mexico Crops through the middle of 2011, from specified regions in Mexico.[5]

And at paragraph 27, FFO concludes its argument on the first claim for relief:

_____

[5]  It is not clear in the complaint whether FFO is arguing that the Projection Memorandum is itself fraudulent.  We have examined the Projection Memorandum.  It simply states an estimate of needed goods with delivery instructions to an American address.  There is no reference to the purpose of the order or for whom the order is placed.

-11-

At the time Debtor made these representations, they were false. During this time period, Debtor in fact ceased to have active operations in Mexico and no ability to pay for the packaging materials he ordered. . . . These facts clearly establish that Debtor ordered the packaging materials from FFO and never intended to pay for them.

Examining the complaint, with particular reference to paragraphs 14, 25, and 27, the bankruptcy court observed,

The first claim for relief still doesn't state a claim for fraud with regard to the September 28th communications that initiated the purchase. In fact, it's strongly suggested from the pleadings that at the time those representations were made, that there really were contracts for the sale in Mexico. . . . What evolved later is irrelevant to the issue of fraud because the fraud has to have happened at the time of the transaction.

The bankruptcy court is correct that a representation made by Daniell in the "winter of 2011" could not have induced FFO to ship goods in September and October of 2010. We also agree with the court that the pleadings "strongly suggest" that there were contracts between Daniell and the Mexican growers. The only unsettled — but essential — question is if and when the contracts were "prematurely terminated."

As the bankruptcy court noted, the critical debtor misrepresentation must occur at or before the point where "the money [or goods] was obtained." Campos v. Beck (In re Beck), 2012 WL 2127751, at *3 (Bankr. D. Ariz. June 11, 2012) ("The plaintiff must make an 'initial showing that the alleged fraud existed at the time of, and has been the methodology by which, the money, property or services were obtained.'") (quoting Conn. Attys. Title Ins. Co. v Budnick (In re Budnick), 469 B.R. 158, 174 (Bankr. D. Conn. 2012)). In other words, misrepresentations made by a debtor to a creditor after the credit has been extended

-12-

have no effect upon the discharge of the debt.  As the Panel has explained,

> For purposes of [§] 523(a)(2), however, the timing of the fraud and the elements to prove fraud focus on the time when the lender . . . made the extension of credit to the Debtor. . . .  In other words, . . . the inquiry of whether a creditor justifiably relied on Debtor's alleged misrepresentations is focused on the moment in time when that creditor extended the funds to Debtor.  See McClellan v. Cantrell, 217 F.3d 890, 896 (7th Cir. 2000)(Ripple, Circuit Judge, concurring) (noting Congress's use of "obtained by" in § 523(a)(2) "clearly indicates that fraudulent conduct occurred at the inception of the debt, i.e. the debtor committed a fraudulent act to induce the creditor to part with his money or property.").

New Falls Corp. v. Boyajian (In re Boyajian), 367 B.R. 138, 147 (9th Cir. BAP 2007) (citing Bombardier Capital, Inc. v. Dobek (In re Dobek), 278 B.R. 496, 508 (Bankr. N.D. Ill. 2002)); see also 4 COLLIER ON BANKRUPTCY ¶ 523.08[1] (Alan N. Resnick & Henry J. Sommer, eds., 16th ed., 2012) (noting that "if the property and services were obtained before the making of any false representation, subsequent misrepresentations will have no effect on dischargeability.").

The bankruptcy court correctly applied this rule when it observed that, "What evolved later [after the goods were shipped] is irrelevant to the issue of fraud because the fraud has to have happened at the time of the transaction."  Hr'g Tr. 3:15-18, September 13, 2012.

No facts are alleged in the complaint with any specificity to show that Daniell's allegedly fraudulent representations occurred before FFO relied on them and shipped him the packaging materials.  Because FFO is alleging fraud, Civil Rule 9(b), as incorporated by Rule 7009, applies to his claim: "In alleging

fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." A pleading is sufficient under Civil Rule 9(b) if it "identifies the circumstances constituting fraud so a defendant can prepare an adequate answer from the allegations." In re Van Wagoner Funds, Inc. Sec. Litig., 382 F. Supp. 2d 1173, 1180 (N.D. Cal 2004). "The plaintiff must state precisely the time, place, and nature of misleading statements, misrepresentations, and specific acts of fraud " Kaplan v Rose, 49 F.3d 1363, 1370 (9th Cir 1994) (emphasis added). The first claim in the SAC simply did not identify the time, place and nature of the allegedly misleading representations.

As discussed above, the time of the alleged representations is the most critical; that is, the precise point in time when Daniell made representations to FFO that he had contracted with various Mexican farmers to sell him a very large quantity of watermelons and honeydew melons, and that those contracts would continue into 2011. Further, it must be averred that, at that point in time, Daniell knew those representations to be false and made them to induce FFO to sell him the goods.

Simply stated, FFO did not allege in the complaint that precise point in time. At most, and viewing the complaint in the most favorable light to FFO, it alleges that at some time before December 2011 Daniell knew of the falsity of his representations. It asks the court and this Panel to infer that a misrepresentation took place before FFO shipped the goods. But as the Supreme Court has instructed us, where the complaint does "not permit the court to infer more than the mere possibility of

-14-

misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief.  Fed. R. Civ. Proc. 8(a)(2)."  Iqbal, 556 U.S. at 679.

In addition, at oral argument before the Panel, because it is not evident from the allegations in the SAC, counsel for FFO was also questioned regarding the dates when Daniell's contracts with the Mexican growers were supposedly terminated.  After some hesitation, counsel conceded that FFO intended to rely upon discovery to determine the precise dates and, consequently, the point in time that Daniell would have made a false representation that the contracts were in place.  However, the Ninth Circuit and other courts have cautioned that, when pleading fraud, Civil Rule 9(b) precludes the use of discovery to supply the facts necessary to state a basic claim for relief:

> In most cases, the Federal Rules of Civil Procedure require only that pleadings contain a short and plain statement of the claim. Fed. R. Civ. P. 8.  Federal Rule of Civil Procedure 9(b), however, requires that "in all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." Fed. R. Civ. P. 9(b).  Rule 9(b) serves not only to give notice to defendants of the specific fraudulent conduct against which they must defend, but also "to deter the filing of complaints as a pretext for the discovery of unknown wrongs, to protect [defendants ] from the harm that comes from being subject to fraud charges, and  to prohibit plaintiffs from unilaterally imposing upon the court, the parties and society enormous social and economic costs absent some factual basis." In re Stac Elec. Sec. Litig. 89 F.3d 1399, 1405 (9th Cir. 1996); see also Rolo v. City Invest. Co. Liquidating Tr., 155 F.3d 644, 658 (3d Cir. 1998) ("The purpose of Rule 9(b) is to provide notice of the 'precise misconduct' with which defendants are charged and to prevent false or unsubstantiated charges."); IUE AFL-CIO Pension Fund v. Herrmann, 9 F.3d 1049, 1057 (2d Cir. 1993) (Rule 9(b)'s heightened pleading requirement alerts defendants to specific facts upon which a fraud claim is based and safeguards a "defendant's reputation and goodwill from improvident

-15-

charges of wrongdoing").

Bly-Magee v. Cal., 236 F.3d 1014, 1018 (9th Cir. 2001). As the Fifth Circuit stated even more strongly,

> In cases of fraud, Rule 9(b) has long played that screening function, standing as a gatekeeper to discovery, a tool to weed out meritless fraud claims sooner than later. We apply Rule 9(b) to fraud complaints with "bite" and "without apology."

United States ex rel. Grubbs v. Kanneganti, 565 F.3d 180, 186 (5th Cir. 2009).

In short, FFO has not alleged the requisite facts in the SAC concerning the point in time at which Daniell allegedly made fraudulent representations, or when he was aware that the contracts with his growers in Mexico had been terminated. Without these dates, FFO cannot allege that Daniell made knowingly false representations on which FFO relied to sell goods to him on credit.

To avoid dismissal under Civil Rule 12(b)(6), a plaintiff must aver in his complaint "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Iqbal, 556 U.S. 662 (quoting Twombly, 550 U.S. at 570). Here, the first claim of the SAC is not plausible on its face because it does not state sufficient facts to establish a claim for relief under § 523(a)(2)(A). The first claim also runs afoul of Civil Rule 9(b) because it does not clearly identify the time, place, and nature of Daniell's alleged misleading representations. We therefore conclude that the bankruptcy court did not err in dismissing the first claim under Civil Rules 12(b)(6) and 9(b).

/ / /

-16-

**B. The Second Claim for Relief.**

FFO's second claim for relief also does not clearly identify the time, place, and nature of Daniell's alleged misleading representations and therefore suffers from the same infirmities as the first claim. But of greater concern to us is that the second claim does not even plausibly state facts justifying relief under the rigors of § 523(a)(2)(A).

The second claim alleges that Daniell engaged in a continuing pattern of fraudulent representations to FFO representatives, which caused FFO to forego or postpone the exercise of its collection rights. By not pursuing collection from him, FFO alleges that it effectively made a "further extension of credit" to Daniell. In this respect, FFO insists that "other courts have consistently held that debts are non-dischargeable under [§] 523 (a)(2)(A) when an 'extension' of credit is fraudulently induced. No new money needs to be lent." FFO's Op. Br. at 19. However, we disagree with this argument and conclude that FFO's decision not to pursue its collection remedies against Daniell did not amount to an "extension of credit" as that term is understood, even in the cases cited by FFO.

For example, in Cho-Hung Bank v. Kim (In re Kim), 62 F.3d 1511 (9th Cir. 1995), the Ninth Circuit adopted the opinion of the BAP in Cho-Hung Bank v. Kim (In re Kim), 163 B.R. 157 (9th Cir. BAP 1994) ("Kim I"). In Kim I, Mrs. Kim received a loan of $150,000 from Cho-Hung Bank to purchase a property and executed a promissory note for that amount to be repaid in 180 days. She purchased the property but was unable to resell it to recoup the

-17-

funds within the 180-day period. By letter, she requested an extension of time to repay the note. The bank granted the extension and Mrs. Kim executed a second promissory note on the same terms as the original note. No new funds were advanced. The bankruptcy court found numerous frauds in the inducement of both the original transaction and the extension of credit.

FFO argues that, in Kim I, "the court found that in order to prevail on a claim that a forbearance is fraudulently induced, the creditor must prove that at the time of the 'extension of credit' that it had valuable collection remedies, that it did not exercise those collection remedies in reliance on the debtor's false representations, and that those remedies lost value during the extension period." FFO's Op. Br. at 19, citing Kim I, 162 B.R. at 160.

FFO suggests that the facts in this case are similar to those in Kim I. They are not. In Kim I, the bank granted an extension of credit and forbearance of its collection remedies on the basis of an identifiable, formal request by the debtor, and evidenced by debtor's execution of a new promissory note. The debtor fraudulently induced the extension of credit by false statements made in the request. In this appeal, Daniell made no specific request to FFO, nor did he otherwise induce FFO to forbear on its collection activities. Indeed, Daniell merely continued to promise payment on his account with FFO, and FFO unilaterally decided to forego or postpone taking legal actions against him.

Similarly in the other case cited by FFO, Ojeda v. Goldberg, 599 F.3d 712, 719 (7th Cir. 2010), the debtor requested

-18-

forbearance on enforcement of a loan and made false representations to the creditor to obtain that forbearance. In short, in both these cases cited by FFO, there was an identifiable act and misrepresentation: the debtor approached the creditor, requested an extension of credit, and made false representations on which the creditor relied in granting that request. Here, FFO has not alleged in the SAC that Daniell approached FFO with a request for an extension of credit, nor has FFO even suggested that any particular misrepresentation or group of misrepresentations were made to it by Daniell with the intent to induce forbearance. Thus, FFO's decision to forego collection was a unilateral decision, not one induced by any act of Daniell. If FFO's argument were correct, any creditor could overcome the requirement that an alleged misrepresentation occur before the credit transaction by simply recharacterizing its later decision not to pursue collection remedies as another "extension of credit" transaction that occurred after some unidentified misrepresentations. Simply put, a creditor's unilateral forbearance of collection efforts does not necessarily constitute "an extension of credit" within the meaning of § 523(a)(2). <u>Gore v. Kressner (In re Kressner)</u>, 206 B.R. 303, 311 (Bankr. S.D.N.Y. 1997), <u>aff'd</u> 152 F.3d 919 (2d Cir. 1998); <u>In re Bacher</u>, 47 B.R. 825, 829 (Bankr. E.D. Pa. 1985); <u>cf.</u> <u>In re Kucera</u>, 373 B.R. 878, 885 (Bankr. C.D. Ill. 2007) (finding that fraudulently induced forbearance may constitute an extension of credit for the purposes of § 523(a)(2)(A) but the plaintiff must prove that a particular misrepresentation induced the plaintiff to forbear).

We conclude that the bankruptcy court did not err in

dismissing FFO's second claim for an exception to discharge under § 523(a)(2)(A) simply because FFO decided not to pursue collection remedies and to believe instead Daniell's continuing promises of payment.

**C.    The Third Claim for Relief.**

FFO's third claim for relief sought an exception to discharge under § 523(a)(6). This Code provision excepts from discharge debts for willful and malicious injuries by the debtor to another entity. Ormsby v. First Am. Title Co. of Nev. (In re Ormsby), 591 F.3d 1199, 1206 (9th Cir. 2010). To succeed on its claim, FFO must separately plead and prove that Daniell acted both willfully and maliciously. Albarran v. New Form. Inc. (In re Barboza), 545 F.3d 702, 706 (9th Cir. 2008).

In particular, a § 523(a)(6) "'willful' injury is a 'deliberate or intentional injury, not merely a deliberate or intentional act that leads to injury.'" Id. (quoting Kawaauhau v. Geiger, 523 U.S. 57, 61, 118 S.Ct. 974, 140 L.Ed.2d 90 (1998)). In order to establish a willful injury, a creditor must show that the debtor had a "subjective motive to inflict injury" or a subjective belief that injury was "substantially certain to result" from the debtor's conduct. In re Ormsby, 591 F.3d at 1206 (citing Carrillo v. Su (In re Su), 290 F.3d 1140, 1146 (9th Cir. 2002)).

None of the facts alleged in the SAC would show that Daniell inflicted a willful and malicious injury on FFO, and for that reason alone, the Panel would be justified in affirming the bankruptcy court's decision to dismiss FFO's claim under § 523(a)(6). However, we conclude FFO's SAC fails for another

-20-

important reason.

Apparently, the bankruptcy court relied on case law deciding that if a debtor commits a conversion of property under California law, that conduct is sufficient to meet the willful and malicious requirements for an exception to discharge under § 523(a)(6). See Transamerica Comm. Fin. Corp. v. Littleton, 942 F.2d 551, 554 (9th Cir. 1994) ("The conversion of another's property without his knowledge or consent, done intentionally and without justification and excuse, to the other's injury, constitutes a willful and malicious injury within the meaning of § 523(a)(6).").[6] We doubt the continuing vitality of Littleton in light of more recent case law discussed above requiring separate findings of the willful and malicious prongs of § 523(a)(6). In its complaint, FFO did not discuss the two prongs separately.

However, this failure to deal with the separate prongs of § 523(a)(6) is of no moment in this appeal because FFO cannot establish under the pled facts that there was conversion under California law. In California, the tort of conversion requires "the wrongful exercise of dominion over the property of another. The elements of conversion are: (1) the plaintiff's ownership or

---

[6] See Peklar v. Ikerd (In re Peklar), 260 F.3d 1035, 1039 (9th Cir. 2001) ("A judgment for conversion under California substantive law decides only that the defendant has engaged in the "wrongful exercise of dominion" over the personal property of the plaintiff. It does not necessarily decide that the defendant has caused "willful and malicious injury" within the meaning of § 523(a)(6). A judgment for conversion under California law therefore does not, without more, establish that a debt arising out of that judgment is non-dischargeable under § 523(a)(6)."

-21-

right of possession of the property; (2) the defendant's conversion by wrongful act or disposition of property rights; and (3) damages." Burlesci v. Peterson, 68 Cal. App.4th 1062, 1066 (Cal. Ct. App. 1998). FFO did not allege in the SAC, nor could it prove, that it had either ownership or the right to possession of the packaging materials it asserts that Daniell converted. To the contrary, under California's version of the Uniform Commercial Code, title and ownership of goods "passes to the buyer at the time and place at which the seller completes his performance with reference to the physical delivery of the goods, despite any reservation of a security interest[.]" CAL. U. COMM. CODE § 2-401 (2); Cal. State Elect. Ass'n v. Zeos Int'l Ltd., 41 Cal. App.4th 1270, 1276 (Cal. Ct. App. 1996) (title passes on delivery of goods to a designated destination). It is undisputed in this case that the packaging materials in question were delivered by FFO to Daniell in September and October 2010. At that point ownership of the packaging materials passed to Daniell. Daniell retained ownership of the packaging materials until he returned the goods to FFO. CAL. U. COMM. CODE § 2-401 (4). Thus, FFO cannot claim that it "owned" the packaging materials while they were in Daniell's possession.

In addition, as the bankruptcy court correctly observed, FFO has cited no authority or reasoned argument as to how it could take lawful possession of the packaging materials from Daniell. The mere fact that it was a creditor with a contractual right to payment from Daniell was insufficient to support a claim against him for conversion. Farmers Ins. Exchange v. Zerin, 53 Cal. App.4th 445, 451-52 (Cal. Ct. App. 1997).

-22-

Based on the facts as alleged in the SAC, FFO has not shown how it was deprived of ownership or lawful possession of the packaging materials by Daniell. As a result, FFO cannot satisfy the elements for a conversion under California law. Since FFO's claim under § 523(a)(6) lacks support under applicable law, the bankruptcy court properly dismissed it under Civil Rule 12(b)(6). Riverside Healthcare Sys., 534 F.3d at 1121.

**II.**
**The bankruptcy court did not abuse its discretion in dismissing the SAC without leave to amend.**

Under Civil Rule 15(a)(2), incorporated by Rule 7015, FFO could amend its complaint only with Daniell's consent, or with leave of the bankruptcy court. However, the bankruptcy court "should freely give leave when justice so requires." Civil Rule 15(a)(2). The Ninth Circuit recently revisited the conditions under which trial courts should grant or deny leave to amend complaints:

> Normally, when a viable case may be pled, a district court should freely grant leave to amend. Lipton v. Pathogenesis Corp., 284 F.3d 1027, 1039 (9th Cir. 2002). However, "liberality in granting leave to amend is subject to several limitations." Ascon Props., Inc. v. Mobil Oil Co., 866 F.2d 1149, 1160 (9th Cir. 1989) (citing DCD Programs, Ltd. v. Leighton, 833 F.2d 183, 186 (9th Cir. 1987)). Those limitations include undue prejudice to the opposing party, bad faith by the movant, futility, and undue delay. Id. Further, "[t]he district court's discretion to deny leave to amend is particularly broad where plaintiff has previously amended the complaint." Id. (citing Leighton, 833 F.2d at 186; Mir v. Fosburg, 646 F.2d 342, 347 (9th Cir. 1980)).

Calasso v. Gen. Dynamics C4 Sys., 637 F.3d 1047, 1059 (9th Cir. 2011).

In this case, FFO filed three complaints, failing twice to cure the bankruptcy court's recurring instructions that the

-23-

relevant facts establishing FFO's fraud claims against Daniell be pled with particularity. At the last hearing, in response to the bankruptcy court's continuing concern for the adequacy of the SAC, counsel for FFO conceded that it "did not sufficiently articulate these two things." Hr'g Tr. 10:16-17. Counsel then asked the bankruptcy for yet another (i.e., a fourth) opportunity to do what should have been done months earlier. In addition to the burden placed on the bankruptcy court by FFO's approach to pleading, the bankruptcy court was obviously aware that Daniell would be prejudiced by subjecting him to yet another complaint/answer/possible dismissal motion scenario. See Rose, 49 F.3d at 1370 ("Expense, delay, and wear and tear on individuals . . . count toward prejudice.").

FFO was given ample opportunity to adequately plead its claims against Daniell. We conclude that, in exercising the "particularly broad" judgment granted trial courts in this context, the bankruptcy court did not abuse its discretion in concluding that, in effect, enough was enough, and dismissing FFO's SAC with prejudice.

**CONCLUSION**

We AFFIRM the order of the bankruptcy court.

-24-